JUDGE STANTON                                    STANTON, J

UNITED STATES DISTRICT COURT **07 CV 3184**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X

                                                      "ECF CASE"

PETER BEARD STUDIO, LLC,                  :

               Plaintiff,      :        07 Civ. 3184 (LSS)

                     :        ORDER TO SHOW CAUSE
          v.                           FOR PRELIMINARY
                     :        INJUNCTION AND
LUCA GIUSSANI and ARNE ZIMMERMAN,   :        TEMPORARY RESTRAINING
                               ORDER
              Defendants.     :

- - - - - - - - - - - - - - - - X

      Upon the annexed affidavit of Nejma Beard, sworn to on

April 20, 2007, the exhibits annexed thereto, the complaint

herein, and upon the accompanying memorandum of law, it is

      ORDERED that the defendants show cause before this Court,

at Room **21.6** United States Courthouse, 500 Pearl Street, New York,

New York, on ~~March~~ *April* **30** , 2007, at **3** **P**.M., or as soon

thereafter as counsel may be heard, why an order should not be

issued, pursuant to Fed. R. Civ. P. 65, 15 U.S.C. § 1116 and 17

U.S.C. §§ 502 and 503, (1) enjoining the defendants during the

pendency of this action from offering for sale, selling, removing

from New York City, transferring, pledging, assigning, emcumbering

or otherwise disposing of the photographic artwork entitled "Man

with Crocodile" currently in the possession of defendant Arne

Zimmerman ("the "Counterfeit Artwork"); and (2) impounding the Counterfeit Artwork; and it is further

ORDERED that, sufficient cause having been shown therefor, pending the hearing of plaintiff's application for a preliminary injunction, pursuant to Fed. R. Civ. P. 65, defendants are temporarily restrained and enjoined from offering for sale, selling, removing from New York City, transferring, pledging, assigning, emcumbering or otherwise disposing of the Counterfeit Artwork.

*LLS*

ORDERED, that security in the amount of $ 10,000.⁰⁰ be posted by the plaintiff prior to April 26, 2007, at 3 o'clock P.M.; and it is further

*LLS*

*LLS*

ORDERED that personal service of a copy of this order and the papers annexed hereto upon the defendants or their counsel on or before April 24, 2007, at 5 o'clock P.M., shall be deemed *LLS* good and sufficient service thereof.

Dated:  New York, New York
        April 20, 2007

3⁰⁴ PM

E N T E R :

_Louis L. Stanton_
U.S.D.J.

- 2 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X

"ECF CASE"

PETER BEARD STUDIO, LLC,                :

                Plaintiff,       :

07 Civ. 3184 (LLS)

        v.                            :          AFFIDAVIT

LUCA GIUSSANI and ARNE ZIMMERMAN,  :

             Defendants.       :

- - - - - - - - - - - - - - - - - x

STATE OF NEW YORK    )
                : ss.:
COUNTY OF NEW YORK   )

     NEJMA BEARD, being duly sworn, states:

     1. I am the wife of 20 years of Peter Beard, who is an internationally known artist, photographer and writer.  I am also Peter's exclusive business agent and the vice president of Peter Beard Studio, LLC, the plaintiff.

     2. I submit this affidavit, based upon my personal knowledge, in support of the Studio's application for a temporary restraining order and preliminary injunction.  We are trying to avoid the sale or the return to defendant Luca Giussani of a counterfeit artwork purporting to be an artwork by Peter based on one of his well known photographs entitled "Mingled Destinies of Man and Crocodile."  We have learned that the counterfeit is

presently in the possession of defendant Arne Zimmerman, a New York art dealer to whom Mr. Luca offered to sell the counterfeit.

3.  The complaint that our attorneys have prepared to be served on the defendants is attached to this affidavit as Exhibit A.

4.  No prior request has been made for the relief sought in this application.

### Background

5.  In order to understand the significance of the purported provenance of the counterfeit that Mr. Giussani is offering for sale, I need to explain some history concerning Peter's career.

6.  Commencing in or about 1994, a man named Peter T. Tunney, through his Soho art gallery, operating as The Time Is Always Now, Inc. (the "Tunney Gallery"), acted as Peter's exclusive sales representative to exhibit and sell his art. Pursuant to their agreement, Peter entrusted his original artworks, consisting primarily of photographs and collages, to the Tunney Gallery.  At the Tunney Gallery's request, Peter also provided a vast number of items from his collection of African-related artifacts, including animal skins and bones, driftwood, stones and weapons, to display in conjunction with his artworks at the Gallery.

7.  Peter appointed me his exclusive business agent on or about February 9, 2001.  A series of financial and other abuses by

- 2 -

the Tunney Gallery led us to terminate Peter's relationship with it on July 5, 2001. We demanded Peter's artwork and other property back, but that did not occur until after protracted litigation, as set forth below.

8. Within a week of the termination, the Tunney Gallery sued Peter and me in New York State Supreme Court. (The lawsuit bore the Index No. 603441/01.) The action was discontinued based on a settlement we signed with the Tunney Gallery in August 2001, which primarily concerned the terms under which Peter's artworks and other property would be returned to us. The Tunney Gallery's subsequent breaches of that agreement and continuing interference with our ability to get Peter's property back resulted in two other actions between the Gallery and Peter in January 2002 (bearing Index Nos. 600206/02 and 600229/02). Most of Peter's property was returned in response to Court-ordered access to the Gallery and a seizure by the Sheriff.

9. Just before Mr. Tunney's reign ended for good, he rented a large space in Miami for a party. I did not attend, but I was told that all manner of decadent conduct occurred, including the theft of various of Peter's artworks.

10. At or about the time we terminated the Tunney Gallery we established the Studio. It has functioned as a production company in connection with the creation of Peter's artworks. It also acts as Peter's representative for the marketing, selling, licensing of

the artworks and other exploitation of the copyrights, trademarks, and other intellectual property rights in the artworks and in Peter's name and likeness.  Significant effort and investment has gone into creating Peter's body of work and carefully marketing it.

11. Because of my long experience organizing and administering the production of fine-art originals of Peter's works with him, I am intimately familiar with the artistic techniques, materials and styles Peter uses to create his works.

12. For example, to create a work of art based on the photographic image "Mingled Destinies of Man and Crocodile," which Peter photographed in Africa in 1965, Peter starts with a high-quality photographic print on silver gelatin paper, which is a heavy-weight, fiber-based photographic paper.  Then he adds to the print, depending on his inspiration, found objects, paint, blood, drawings, animal skins and/or inscriptions. Usually the inscriptions, drawings and signature are created with a calligraphic pen using India ink, but Peter also signs his signature in a variety of materials, such as inks (including ballpoint) and pencil according to his inspiration at the moment of signature.

13. "Mingled Destinies" is an iconic Beard image, and artworks incorporating it have been widely published and exhibited.  Just as examples, works featuring this image have

- 4 -

appeared in the following art books: *Eyelids of Morning*
(1973); *Photo Poche* (1996); *Oltre la fine del Mondo* (1997); *Fifty
Years of Portraits* (1999); *Stress and Density* (1999); *Peter Beard:
Taschen Artist's Edition* (2006); and Jon Bowermaster's *The
Adventures and Misadventures of Peter Beard In Africa* (1993).

Recent Developments

First Contact with Mr. Giussani

14. Just this past January, the Studio received an email
from Mr. Giussani that stated:

> I received as a present two photos by Peter
> Beard one depicting a Masai Fisherman with a
> huge grouper with big drawings on top and
> another one depicting a chimpanzee with leaf
> drawings on top.  They are pictures and not
> prints, nevertheless there is no date or
> signature on the works.

> I contacted Sotheby's to have more information
> on these pictures and they told me to contact
> with you directly.

> I would like to know the date in which the
> pictures where taken and the date of realization
> of the prints and drawings, and an idea of the
> value as they are not signed.

> I can send you a picture of the works in
> question.

This email, dated January 27, 2007, is attached hereto as Exhibit
B.

- 5 -

15. On my instructions, Kathie Carroll, the Studio's archivist, responded with the following information regarding the underlying photographic images of the artworks Mr. Giussani described:

> The image of the fisherman (*Nguya and his 201 lb. Nile Perch*) was shot in 1968 and the image of the gorilla (*Baby Mountain Gorilla, Rwanda*) was shot in 1984.  If you send me a few jpegs of the pieces as well as their dimensions I should be able to give you a better idea of the date they were completed and, possibly, their value.

Her email (sent January 29, 2007) is attached as Exhibit C.

16. Less than 40 minutes later, Giussani responded:

> The dimensions of the Fisherman are: 63 X 49 Inches, and the dimensions of the Gorilla are: 43 X 31.5 Inches.  I would really appreciate all the information you can give me.

His email, together with the photographs of the works, is in Exhibit D.

17. On a closer examination of his email and the photographs of the pieces Mr. Giussani attached to his email, I saw that the pieces were unsigned.  This made me immediately suspicious, since Peter signs his artworks before they are sold or gifted. Accordingly, I caused the following response (in Exhibit E) to be sent later that same morning:

> Could you tell me what year you received these in?  Peter's management shifted about 5 years ago and, as is to be expected, studio policies have shifted as well, which might explain why these prints aren't signed.  Also, I'm not sure that I understand the distinction you are making

- 6 -

between "pictures" and "prints" would you mind
explaining what you mean?  From these images
they look like Peter's standard gelatin silver
prints.

18. Mr. Giussani then replied:

I received these pictures as a present for my
birthday, now I do not really remember if it was
2000 or 2001.  They are definitively gelatin
silver prints with drawings on top, as they are
not signed is it possible to have a
certification from you of some kind and the
valuation?

His email is attached as Exhibit F.

19. Seeing the years 2000 or 2001 meant that to us this was
yet another problem, in addition to several others, left over from
the Tunney Gallery era.  The Studio staff politely explained to
Mr. Giussani that the Studio could not authenticate or appraise
unsigned works, and we decided to have nothing further to do with
him.

The Present Situation

20. This past Monday evening, April 16, 2007, I was
contacted by Mr. Arne Zimmerman.  Mr. Zimmerman is a New York City
art dealer who has sold many of Peter's works in the secondary
market and in whom we have complete trust.  It was explained to me
that he was required to be named as a defendant in this action
because he is a necessary party to the litigation in view of the
relief we seek.

- 7 -

21. Mr. Zimmerman informed me that he had been contacted by a gentleman from Miami who wanted to sell him a Beard artwork. After Mr. Zimmerman looked at the piece, he became suspicious about whether it was bona fide, and he described some of the things about the piece that caused him to call us. My own suspicions were heightened when I heard that the "Miami gentleman" was none other than Mr. Giussani. At my request, Mr. Zimmerman sent me a copy of the image contained on a sales certificate Mr. Giussani had provided to him, which is attached as Exhibit G.

**Evidence that the Piece**
**Is Counterfeit**

22. When I saw the image from Mr. Giussani, I was initially surprised to see the image displayed horizontally, since it is intended to be viewed vertically. I also noticed that reddish brown paint had been applied in uncharacteristic brush directions, and there was also a spider-like black splatter of ink in the middle that I have never seen on Peter's work.

23. Then I read the supposed provenance on the sales certificate: "Purchased by seller in Italy from a Private Collector friend of Peter Beard during 1998." Again, Mr. Giussani was claiming a provenance from the Tunney Gallery years. On top of that, he was charging $45,000 for the piece, which is below what the Studio charges for an authentic artwork of this size and

subject.  I immediately went to Mr. Zimmerman's gallery to see the piece in person.

24. Contrary to Mr. Giussani's sales certificate's contents, I discovered that the counterfeit is not a silver gelatin print at all.  Instead, it is very obviously a digital scan enlarged onto very large (nearly 3.5' by 5.5'), plastic-like paper.  The photograph itself is very badly pixilated (like looking very closely at a television screen), indicating that it has been greatly enlarged from a scan that was perhaps as small as a book-sized photograph.

25. As for the artwork on top of the photograph, I have already mentioned the oddity of the splatter and the paint.  Up close, I could see that the brush direction of the reddish-brown paint is atypical, because it fans into the photograph at odd angles.  It is also applied in a cruder, thicker way than Peter's method.  For example, attached as Exhibit H is an artwork created by Peter based on "Mingled Destinies" that appeared in the 1999 book, *Stress and Density*.  The brush work on the authentic work is light and directional, with only one or two strokes per sides, not at multiple, thick, choppy angles.

26. In addition, the size and placement of the signature on the counterfeit is all wrong.  It is bigger and thicker than Peter's usual signature, as if traced in paint over a smaller scanned copy that enlarged.  Also, strangely, the signature is

- 9 -

right smack in the center of the image.  (A close-up of the counterfeit signature is attached as Exhibit I.)  By contrast, Peter uses a more modest sized signature along the edges of his works, as can be seen in Exh. H.

27.  Also, the curling designs near the signature are completely unlike Peter's scalloped designs.  On the counterfeit, these curls are done with the tip of a nibbed pen, whereas Peter uses the side of the nib, not its tip, as a brush.

28. The flower design drawn by the crocodile tail is a ridiculous addition that is totally at odds with Peter's designs.

29. In addition, the placement of snake skins is all wrong. When Peter adds objects like these to his work, it is done to create balance and unity with the other added elements.  In the counterfeit, they appear to be thrown on randomly, see Exhibit J without creating any greater impact beyond the skin itself.

30. The final insult is on the back of the counterfeit, where a partial stamp from the Tunney Gallery appears.  See Exhibit K.  Ironically, the partial word that is cut off is "unlawful."

Nejma Beard

Sworn to before me this

20th day of April, 2007.

- 10 -

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

PETER BEARD STUDIO, LLC,                    :

                 Plaintiff,          :

        v.                                  :

LUCA GIUSSANI and ARNE ZIMMERMAN,    :

               Defendants.          :

- - - - - - - - - - - - - - - - X

07 Civ.

COMPLAINT

Plaintiff Demands
a Trial by Jury

Plaintiff, by its attorneys Shatzkin & Mayer, P.C., for her complaint alleges:

### The Parties

1.  Plaintiff is a limited liability company duly formed and existing pursuant to the laws of the State of Delaware, with its principal place of business at 205 West 57th Street, New York, New York, and is the exclusive representative of the internationally known, critically acclaimed photographer and artist Peter Beard ("Beard").

2.  Defendant Luca Giussani ("Giussani") is an individual who, upon information and belief, is a citizen and resident of Miami, Florida.

3.  Defendant Arne Zimmerman ("Zimmerman") is an individual who, upon information and belief, is a citizen and resident of New

York, New York, doing business as "Pablo's Birthday," an art
gallery, having its principal place of business at 84 Franklin
Street, New York, New York.

### Jurisdiction and Venue

4.   This action is for copyright infringement and unfair
competition, arising under the United States Copyright Act, Title
17, U.S. Code, and Lanham Act, Title 15, U.S. Code.

5.   Jurisdiction is vested in this Court pursuant to 28
U.S.C. §§ 1331, 1337 and 1338.

6.   Venue is proper in this district under 28 U.S.C.
§§ 1391(b) and 1400(a), because both defendants may be found in
this district, a substantial part of the acts complained of
occurred in the district and the property that is the subject of
the action is situated in the district.

### Allegations Common to the Claims

7.   In 1965, Beard created a photographic image of a man and
crocodile and has since created works of art incorporating that
photograph, which bears the title "The Mingled Destinies of Man
and Crocodile" (the "Beard Photograph").

8.   The Beard Photograph is wholly original with Beard and
constitutes copyrightable subject matter under the laws of the
United States.

- 2 -

the artworks and other exploitation of the copyrights, trademarks, and other intellectual property rights in the artworks and in Peter's name and likeness. Significant effort and investment has gone into creating Peter's body of work and carefully marketing it.

11. Because of my long experience organizing and administering the production of fine-art originals of Peter's works with him, I am intimately familiar with the artistic techniques, materials and styles Peter uses to create his works.

12. For example, to create a work of art based on the photographic image "Mingled Destinies of Man and Crocodile," which Peter photographed in Africa in 1965, Peter starts with a high-quality photographic print on silver gelatin paper, which is a heavy-weight, fiber-based photographic paper. Then he adds to the print, depending on his inspiration, found objects, paint, blood, drawings, animal skins and/or inscriptions. Usually the inscriptions, drawings and signature are created with a calligraphic pen using India ink, but Peter also signs his signature in a variety of materials, such as inks (including ballpoint) and pencil according to his inspiration at the moment of signature.

13. "Mingled Destinies" is an iconic Beard image, and artworks incorporating it have been widely published and exhibited. Just as examples, works featuring this image have

appeared in the following art books: *Eyelids of Morning* (1973); *Photo Poche* (1996); *Oltre la fine del Mondo* (1997); *Fifty Years of Portraits* (1999); *Stress and Density* (1999); *Peter Beard: Taschen Artist's Edition* (2006); and Jon Bowermaster's *The Adventures and Misadventures of Peter Beard In Africa* (1993).

Recent Developments

First Contact with Mr. Giussani

14. Just this past January, the Studio received an email from Mr. Giussani that stated:

> I received as a present two photos by Peter Beard one depicting a Masai Fisherman with a huge grouper with big drawings on top and another one depicting a chimpanzee with leaf drawings on top. They are pictures and not prints, nevertheless there is no date or signature on the works.
>
> I contacted Sotheby's to have more information on these pictures and they told me to contact with you directly.
>
> I would like to know the date in which the pictures where taken and the date of realization of the prints and drawings, and an idea of the value as they are not signed.
>
> I can send you a picture of the works in question.

This email, dated January 27, 2007, is attached hereto as Exhibit B.

- 5 -

15. On my instructions, Kathie Carroll, the Studio's archivist, responded with the following information regarding the underlying photographic images of the artworks Mr. Giussani described:

> The image of the fisherman (*Nguya and his 201 lb. Nile Perch*) was shot in 1968 and the image of the gorilla (*Baby Mountain Gorilla, Rwanda*) was shot in 1984. If you send me a few jpegs of the pieces as well as their dimensions I should be able to give you a better idea of the date they were completed and, possibly, their value.

Her email (sent January 29, 2007) is attached as Exhibit C.

16. Less than 40 minutes later, Giussani responded:

> The dimensions of the Fisherman are: 63 X 49 Inches, and the dimensions of the Gorilla are: 43 X 31.5 Inches. I would really appreciate all the information you can give me.

His email, together with the photographs of the works, is in Exhibit D.

17. On a closer examination of his email and the photographs of the pieces Mr. Giussani attached to his email, I saw that the pieces were unsigned. This made me immediately suspicious, since Peter signs his artworks before they are sold or gifted. Accordingly, I caused the following response (in Exhibit E) to be sent later that same morning:

> Could you tell me what year you received these in? Peter's management shifted about 5 years ago and, as is to be expected, studio policies have shifted as well, which might explain why these prints aren't signed. Also, I'm not sure that I understand the distinction you are making

- 6 -

between "pictures" and "prints" would you mind
explaining what you mean?  From these images
they look like Peter's standard gelatin silver
prints.

18. Mr. Giussani then replied:

I received these pictures as a present for my
birthday, now I do not really remember if it was
2000 or 2001.  They are definitively gelatin
silver prints with drawings on top, as they are
not signed is it possible to have a
certification from you of some kind and the
valuation?

His email is attached as Exhibit F.

19. Seeing the years 2000 or 2001 meant that to us this was
yet another problem, in addition to several others, left over from
the Tunney Gallery era.  The Studio staff politely explained to
Mr. Giussani that the Studio could not authenticate or appraise
unsigned works, and we decided to have nothing further to do with
him.

The Present Situation

20. This past Monday evening, April 16, 2007, I was
contacted by Mr. Arne Zimmerman.  Mr. Zimmerman is a New York City
art dealer who has sold many of Peter's works in the secondary
market and in whom we have complete trust.  It was explained to me
that he was required to be named as a defendant in this action
because he is a necessary party to the litigation in view of the
relief we seek.

21. Mr. Zimmerman informed me that he had been contacted by a gentleman from Miami who wanted to sell him a Beard artwork. After Mr. Zimmerman looked at the piece, he became suspicious about whether it was bona fide, and he described some of the things about the piece that caused him to call us. My own suspicions were heightened when I heard that the "Miami gentleman" was none other than Mr. Giussani. At my request, Mr. Zimmerman sent me a copy of the image contained on a sales certificate Mr. Giussani had provided to him, which is attached as Exhibit G.

Evidence that the Piece
Is Counterfeit

22. When I saw the image from Mr. Giussani, I was initially surprised to see the image displayed horizontally, since it is intended to be viewed vertically. I also noticed that reddish brown paint had been applied in uncharacteristic brush directions, and there was also a spider-like black splatter of ink in the middle that I have never seen on Peter's work.

23. Then I read the supposed provenance on the sales certificate: "Purchased by seller in Italy from a Private Collector friend of Peter Beard during 1998." Again, Mr. Giussani was claiming a provenance from the Tunney Gallery years. On top of that, he was charging $45,000 for the piece, which is below what the Studio charges for an authentic artwork of this size and

- 8 -

subject.  I immediately went to Mr. Zimmerman's gallery to see the piece in person.

24. Contrary to Mr. Giussani's sales certificate's contents, I discovered that the counterfeit is not a silver gelatin print at all.  Instead, it is very obviously a digital scan enlarged onto very large (nearly 3.5' by 5.5'), plastic-like paper.  The photograph itself is very badly pixilated (like looking very closely at a television screen), indicating that it has been greatly enlarged from a scan that was perhaps as small as a book-sized photograph.

25. As for the artwork on top of the photograph, I have already mentioned the oddity of the splatter and the paint.  Up close, I could see that the brush direction of the reddish-brown paint is atypical, because it fans into the photograph at odd angles.  It is also applied in a cruder, thicker way than Peter's method.  For example, attached as Exhibit H is an artwork created by Peter based on "Mingled Destinies" that appeared in the 1999 book, *Stress and Density*.  The brush work on the authentic work is light and directional, with only one or two strokes per sides, not at multiple, thick, choppy angles.

26. In addition, the size and placement of the signature on the counterfeit is all wrong.  It is bigger and thicker than Peter's usual signature, as if traced in paint over a smaller scanned copy that enlarged.  Also, strangely, the signature is

- 9 -

right smack in the center of the image.  (A close-up of the counterfeit signature is attached as Exhibit I.)  By contrast, Peter uses a more modest sized signature along the edges of his works, as can be seen in Exh. H.

27.  Also, the curling designs near the signature are completely unlike Peter's scalloped designs.  On the counterfeit, these curls are done with the tip of a nibbed pen, whereas Peter uses the side of the nib, not its tip, as a brush.

28. The flower design drawn by the crocodile tail is a ridiculous addition that is totally at odds with Peter's designs.

29. In addition, the placement of snake skins is all wrong. When Peter adds objects like these to his work, it is done to create balance and unity with the other added elements.  In the counterfeit, they appear to be thrown on randomly, see Exhibit J without creating any greater impact beyond the skin itself.

30. The final insult is on the back of the counterfeit, where a partial stamp from the Tunney Gallery appears.  See Exhibit K.  Ironically, the partial word that is cut off is "unlawful."

_____
Nejma Beard

Sworn to before me this 20th day of April, 2007.

_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x

PETER BEARD STUDIO, LLC,                  :

                Plaintiff,        :        07 Civ.

        v.                              :        AFFIDAVIT

LUCA GIUSSANI and ARNE ZIMMERMAN,   :

              Defendants.       :

- - - - - - - - - - - - - - - - x


STATE OF NEW YORK    )
                : ss.:
COUNTY OF NEW YORK   )

    NEJMA BEARD, being duly sworn, states:

    1.  I am the wife of 20 years of Peter Beard, who is an internationally known artist, photographer and writer.  I am also Peter's exclusive business agent and the vice president of Peter Beard Studio, LLC, the plaintiff.

    2.  I submit this affidavit, based upon my personal knowledge, in support of the Studio's application for a temporary restraining order and preliminary injunction.  We are trying to avoid the sale or the return to defendant Luca Giussani of a counterfeit artwork purporting to be an artwork by Peter based on one of his well known photographs entitled "Mingled Destinies of Man and Crocodile."  We have learned that the counterfeit is

presently in the possession of defendant Arne Zimmerman, a New York art dealer to whom Mr. Luca offered to sell the counterfeit.

3. The complaint that our attorneys have prepared to be served on the defendants is attached to this affidavit as Exhibit A.

4. No prior request has been made for the relief sought in this application.

### Background

5. In order to understand the significance of the purported provenance of the counterfeit that Mr. Giussani is offering for sale, I need to explain some history concerning Peter's career.

6. Commencing in or about 1994, a man named Peter T. Tunney, through his Soho art gallery, operating as The Time Is Always Now, Inc. (the "Tunney Gallery"), acted as Peter's exclusive sales representative to exhibit and sell his art. Pursuant to their agreement, Peter entrusted his original artworks, consisting primarily of photographs and collages, to the Tunney Gallery. At the Tunney Gallery's request, Peter also provided a vast number of items from his collection of African-related artifacts, including animal skins and bones, driftwood, stones and weapons, to display in conjunction with his artworks at the Gallery.

7. Peter appointed me his exclusive business agent on or about February 9, 2001. A series of financial and other abuses by

- 2 -

the Tunney Gallery led us to terminate Peter's relationship with it on July 5, 2001. We demanded Peter's artwork and other property back, but that did not occur until after protracted litigation, as set forth below.

8. Within a week of the termination, the Tunney Gallery sued Peter and me in New York State Supreme Court. (The lawsuit bore the Index No. 603441/01.) The action was discontinued based on a settlement we signed with the Tunney Gallery in August 2001, which primarily concerned the terms under which Peter's artworks and other property would be returned to us. The Tunney Gallery's subsequent breaches of that agreement and continuing interference with our ability to get Peter's property back resulted in two other actions between the Gallery and Peter in January 2002 (bearing Index Nos. 600206/02 and 600229/02). Most of Peter's property was returned in response to Court-ordered access to the Gallery and a seizure by the Sheriff.

9. Just before Mr. Tunney's reign ended for good, he rented a large space in Miami for a party. I did not attend, but I was told that all manner of decadent conduct occurred, including the theft of various of Peter's artworks.

10. At or about the time we terminated the Tunney Gallery we established the Studio. It has functioned as a production company in connection with the creation of Peter's artworks. It also acts as Peter's representative for the marketing, selling, licensing of

- 3 -

9. Beard is the sole owner of the copyright in the Beard Photograph, which was duly registered in the U.S. Copyright Office as part of the book Eyelids of Morning on January 11, 1974, and receiving U.S. Copyright registration number A-527582.

10. As the owner of the Beard Photograph copyright, Beard has the exclusive right to reproduce and distribute the Beard Photograph and to prepare derivatives of it.

11. On or about February 9, 2001, Peter Beard authorized his wife Nejma Beard to act on his behalf as his exclusive agent with respect to all his business affairs.  Mrs. Beard conducts business as his exclusive agent through plaintiff.

12. As such, plaintiff handles, inter alia, all sales, commissioning and licensing of Peter Beard's works and has been very active in monitoring the market for fakes and forgeries.

13. On or about April 16, 2007, Mrs. Beard discovered that Giusanna was offering to Zimmerman an artwork of what he claimed was "Man with Crocodile" [sic] by Peter Beard (the "Counterfeit Work").

14. The Counterfeit Work bears a signature in Beard's name near the middle of the Counterfeit Work.

15. Based on a personal examination of the Counterfeit Work at Zimmerman's premises by Mrs. Beard, and the plaintiff's Studio Manager, Albina De Meio, plaintiff has determined that the Counterfeit Work is not an authentic print of the Beard

Photograph, not an original Beard artwork, and not otherwise authorized by plaintiff.

## FIRST CLAIM FOR RELIEF
### (Copyright Infringement)

16. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 15 as if fully set forth herein.

17. Defendants have infringed Beard's copyright.

18. Giussani's infringement is willful, as that term is used in section 504(c)(2) of the Copyright Act.

19. By reason of the foregoing, plaintiff has been damaged in an amount to be determined.

20. In addition, defendants' infringement threatens plaintiff with irreparable injury, including to the value of Beard's artworks and reputation.

21. By virtue of the foregoing, plaintiff is entitled to an injunction, statutory or actual damages to be proved at trial, attorneys' fees and other relief, pursuant to the U.S. Copyright Act.

## SECOND CLAIM FOR RELIEF
### (Unfair Competition)

22. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 15 as if fully set forth herein.

- 4 -

23. The public recognizes Beard's work, including without limitation the Beard Photograph, and his other iconic photographs, as distinctive works of the highest professional quality.

24. The Beard Photograph and derivative artworks of it created by Beard have been included in numerous books about contemporary photography.

25. Original Beard artworks incorporating the Beard Photograph sell that are the same size as the Counterfeit Work at retail for between $50,000 and $75,000.

26. By virtue of sustained, diligent marketing and promotion and of their wide dissemination in books and popular media, Beard's artworks, and particularly those incorporating the Beard Photograph, have acquired secondary meaning and are associated by the public with Peter Beard as their source.

27. Goodwill of enormous value has come to be associated with artworks and photographs bearing Peter Beard's name.

28. Plaintiff has not granted either defendant the right to reproduce the Beard Photograph or make derivative works of it.

29. Plaintiff has not authorized the creation of the Counterfeit Work, nor granted to anyone the right to display, print, affix or otherwise use Peter Beard's name on or in connection with the Counterfeit Work.

30. The Counterfeit Work is grossly inferior in quality to Beard's artworks that plaintiff offers for sale.

- 5 -

31. Defendants' use of Beard's name and a counterfeit of the Beard Photograph constitutes a false designation of origin, wrongly representing to the public that Beard has endorsed, sanctioned, approved or consented to, or was involved in, the creation and exploitation of the Counterfeit Work, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

32. Giussani's violations of section 43(a) have been committed willfully, wantonly, maliciously and with reckless disregard for plaintiff's rights.

33. By reason of the foregoing violations of Section 43(a) of the Lanham Act, 15 U.S.C.§ 1125(a), defendants have caused damage to plaintiff and threaten plaintiff with irreparable injury.

WHEREFORE, plaintiff demands judgment against defendants, jointly and severally, as follows:

(a) enjoining both defendants, their agents and representatives, and anyone acting in concert with any of them from offering for sale, selling or conveying the Counterfeit work;

(b) enjoining both defendants, their agents and representatives, and anyone acting in concert with any of them from representing in any manner that the Counterfeit Work is associated with or originated from plaintiff or Peter Beard and from using Beard's name in connection with the Counterfeit Work;

(c) requiring defendants to deliver up the Counterfeit Work to plaintiff for destruction;

(d) awarding plaintiff actual damages in an amount to be determined or statutory damages fixed by the Court, at its election;

(e) awarding plaintiff its reasonable attorney's fees;

(f) as against Giussani, awarding plaintiff statutory damages for willful infringement pursuant to 17 U.S.C. § 504, and treble damages pursuant to 15 U.S.C. § 1117; and

(e) awarding such other and further relief as the Court deems just and proper, including the costs and disbursements of this action.

Dated:  New York, New York
        April 20, 2007

                                    SHATZKIN & MAYER, P.C.

                                    By  Karen Shatzkin
                                        Karen Shatzkin (KS 8598)
                                    Attorneys for Plaintiff
                                    1776 Broadway, 21st Floor
                                    New York, New York 10019-2002
                                    (212) 684-3000

- 7 -

Exhibit B

On 1/27/07 1:46 PM, "Luca Giussani" <lgiussani@dorial.com> wrote:

Messrs:
I received as a present two photos by Peter Beard one depicting a Masai
Fisherman with a huge grouper with big drawings on top and another one depicting a chimpanzee
with leaf drawings on top. They are pictures and not prints, nevertheless there is no date or signature
on the works.
I contacted Sotheby's to have more information on these pictures and they told me to contact with you directly.
I would like to know the date in which the pictures where taken and the date of realization of the prints and drawings, and an idea of the value as they are not signed.
I can send you a picture of the works in question.
I thank you very much for your cooperation and attention.
Sincerely,

Luca Giussani, President

Dorial Management, LLC.

Miami Beach, Florida (USA)

+ 1 305 673 9811 Land

+ 1 786 206 0357 VoIP

+ 1 305 467 7737 Cell

+ 1 305 674 9739 Fax

## SALE CERTIFICATE



Peter Beard

" Man with Crocodile"

Gelatin Silver Print with Ink and Blood Work and Snake Skins Collage, Signed and Dated
44 X 64 8 Inches, 112 X 164 Cm

Purchased by Seller in Italy from a Private Collector friend of Peter Beard during 1998.

Selling price  U.S.$ 45,000 (fortyfive thousand)

Selling Date  April 4th, 2007

Buyer

Aime Zimmermann
84 Franklin St.
New York, N.Y.10013
azimmermann@kastnernetwork.us

Seller

Luca Grossani
905 West Dilido Drive
Miami Beach, FL. 33139
lgrossani@hotmail.com

On Jan 29, 2007, at 9:40 AM, Kathie Carroll wrote:

Good Morning Luca,

 The image of the fisherman (Nguya and his 201 lb. Nile Perch) was shot in 1968 and the image of the gorilla (Babt Mountain Gorilla, Rwanda) was shot in 1984.  If you send me a few jpegs of the pieces as well as their dimensions I should be able to give you a better idea of the date they were completed and, possibly, their value.

 Best,
 Kathie


 Kathie Carroll
 Peter Beard Studio
 (212) 929-5153
 kathie@peterbeard.com

This message is intended only for the use of the Addressee and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately. The copyright in each work is retained by Peter Beard, and the work may not be reproduced without prior written permission of the Peter Beard Studio.

Exhibit D

From: Luca Giussani <lgiussani@dorial.com>
Date: Mon, 29 Jan 2007 10:18:25 -0500
To: Kathie Carroll <kathie@peterbeard.com>
Subject: Re: Luca Giussani


Dear Kathie:
thank you very much for your prompt response, here are the pictures,
the dimensions of the Fisherman are: 63 X 49 Inches, and the dimensions of the
Gorilla are: 43 X 31.5 Inches.
I would really appreciate all the information you can give me.
Sincerely,

Luca Giussani





Exhibit E

On Jan 29, 2007, at 10:47 AM, Kathie Carroll wrote:

Hi Luca,

Could you tell me what year you received these in?  Peter's management shifted about 5 years ago and, as is to be expected, studio policies have shifted as well, which might explain why these prints aren't signed.  Also, I'm not sure that I understand the distinction you are making between "pictures" and "prints" would you mind explaining what you mean?  From these images they look like Peter's standard gelatin silver prints.

  Best,
  Kathie

Exhibit F

**From:** Luca Giussani <lgiussani@dorial.com>
**Date:** Mon, 29 Jan 2007 11:51:39 -0500
**To:** Kathie Carroll <kathie@peterbeard.com>
**Subject:** Re: Luca Giussani

Dear Kathie:
I received these pictures as a present for my
birthday, now I do not really remember if it
was 2000 or 2001.
They are definitively gelatin silver prints
with drawings on top, as they are not signed it
is possible to have
a certification from you of some kind and the
valuation?
Thank you very much for your cooperation.
Sincerely,
Luca Giussani

ALL-STATE LEGAL  800-222-0510   ED11   RECYCLED



Exhibit H



Exhibit I



Exhibit J



Exhibit K



© Copyright 2003 The Time is Always Now Inc.
All rights reserved. Distribution and/or reproduction of this
image in whole or in part as written permission of
Peter Beard or The Time is Always Now Inc. is pro…