UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

PETER BEARD STUDIO, LLC,                    :          07 Civ. 3184 (LLS)

                              Plaintiff,    :

              v.                            :

LUCA GIUSSANI and ARNE ZIMMERMAN,           :

                              Defendants.   :

--------------------------------------------------------------X


MEMORANDUM OF LAW IN SUPPORT OF  CROSS-MOTION TO DISMISS COMPLAINT
AND VACATE TEMPORARY RESTRAINING ORDER
OR IN THE ALTERNATIVE TO INCREASE INJUNCTION BOND




Dated:  New York, New York
        April 30, 2007


                              DUNNINGTON BARTHOLOW &
                              MILLER LLP
                              Raymond J. Dowd (RD-7508)
                              *Attorneys for Defendant Luca Giussani*
                              477 Madison Avenue, 12th Floor
                              New York, NY 10022
                              Tel: (212) 682-8811
                              Fax: (212) 661-7769
                              Email: rdowd@dunnington.com

TABLE OF CONTENTS

SUMMARY ......................................................................................................... 1

    Plaintiff's Defective Complaint Cannot Be Cured    1

    The Temporary Restraining Order Should Be Vacated and the Injunction Denied    1

    Background    2

ALLEGATIONS OF THE COMPLAINT ...................................................................... 3

    The Plaintiff    3

    The Copyrighted Photograph    3

    Beard's Derivative Works    3

    Beard's "Exclusive Agent" Nejma Beard    4

    Discovery of "Counterfeit" Work    4

    Affidavit In Support of the Injunction    4

    The Elephant on The Table    5

ARGUMENT ......................................................................................................... 9

    I.    The First Claim For Copyright Infringement Should Be Dismissed Because Plaintiff Lacks Standing To Bring Copyright Infringement Claims    9

    II.    The First Claim For Copyright Infringement  Should Be Dismissed Because The Court Lacks Subject Matter Jurisdiction Over Unregistered Copyrights In Derivative Works    10

    III.    Plaintiff's Second Claim Under Section 43(a) of Lanham Act Claim Is Barred By The Copyright Act and Should Be Dismissed    11

    IV.    Even If The Court Finds That the Complaint States A Claim Under Section 43(a) of the Lanham Act, It Should Be Dismissed Because Plaintiff Lacks Standing    14

    V.    The Injunction Should Be Vacated Because Plaintiff Has Failed to Make A Prima Facie Case of Copyright Ownership As An Injunction Requires and Has Failed To Submit Any Admissible Evidence Showing A Likelihood of Success on the Merits    15

a.    Plaintiff Has No Standing and Is Entitled To No Statutory Presumption of Irreparable Harm                                                                                          16

b.    Plaintiff Has Failed to Show Any Likelihood of Success on the Merits or Irreparable Harm                                                                                          17

c.    Defendant Giussani Shows A Strong Likelihood of Prevailing the Affirmative Defense of   the First Sale Doctrine                                                               20

VI.    In The Alternative, An Evidentiary Hearing Should Be Scheduled and Plaintiff's Injunction Bond Should Be Increased To At Least $150,000                                        21

CONCLUSION                                                                                      22

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971 (2d Cir. 1991) ...................9

*Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346 (S.D.N.Y. 2003) ...........................18

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049 (2d Cir. 1990) ..................................................................................................................................4

*Bose Corp. v. Silonsonnic Corp.*, 413 F. Supp. 2d 339 (S.D.N.Y. 2006)........................15

*Bourne v. Walt Disney Co.*, 68 F.3d 621 (2d Cir. 1995).......................................................3

*Bracey v. Bd. of Educ. of City of Bridgeport*, 368 F.3d 108 (2d Cir. 2004) ......................7

*Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99 (1957) .............................................................8

*Corbis v. Ugo Networks, Inc.*, 322 F. Supp. 2d 520 (S.D.N.Y. 2004)................................8

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 123 S. Ct. 2041 (2003).................................................................................................................................12, 13

*Eden Toys, Inc. v. Florelee Undergarment Co. Inc.*, 697 F.2d 27 (2d Cir. 1982) <u>citing</u> 17 U.S.C. § 501 (b) ...............................................................................................9

*Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ..........................................7

*First Technology Safety Systems, Inc. v. Depinet*, 11 F.3d 641 (6th Cir. 1993)..............1, 2

*King v. Innovation Books Corp.*, 976 F.2d 824 (2d Cir. 1992).............................................1

*Lunney v. United States*, 319 F.3d 550 (2d Cir. 2003).........................................................7

*Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825 .................................12

*Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444 (S.D.N.Y. 2005) ...........................11

*MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190 (2d Cir.2004)......................15

*Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96 (2d Cir. 2005) ......................................8

*Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032 (9th Cir. 1994) ..................................................................................................................15

*Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828 (C.D. Cal. 2006) ..................................16

*Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005).......................9

*Siverstar Ents., Inc. v. Aday*, 537 F. Supp. 236 (S.D.N.Y. 1982) ....................................14

*Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17 (2d Cir.2004) ................................15

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000)....................................16

*Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir.1995).......................15

*Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167 (7th Cir. 1997)....................................3

*Visa U.S.A., Inc. v. First Data Corp.*, 2005 U.S. Dist. LEXIS 37276 (N.D. Cal. Aug. 16, 2005) ..............................................................................................14

## UNREPORTED CASES

*Calloway v. The Marvel Entertainment Group*, 1983 WL. 1141 (S.D.N.Y. 1983).............8

*Gametech Intern., Inc. v. Trend Gaming Systems, L.L.C.*, 2005 WL. 1473982 (D. Ariz. 2005) ............................................................................................................4

*Krasnyi Oktyabr, Inc. v. Trilini Imports*, 2007 WL. 1017620 (E.D.N.Y. March 30, 2007) .........................................................................................................14

*Marvullo v. Gruner & Jahr AG & Co.*, 2001 WL. 40772 (S.D.N.Y. 2001) quoting *Kelly v. L.L. Cool J*, 145 F.R.D. 32 (S.D.N.Y. 1992) aff'd 23 F.3d 398 (2d Cir. 1992) ......................................................................................................8, 11

*Sunham Home Fashions, LLC v. Pem-America, Inc.*, 2002 WL. 31834477 (S.D.N.Y. 2002) aff'd, 83 Fed Appx. 369 (2d Cir. 2003) ..............................................3

*Tabachnik v. Dorsey*, 2005 WL. 1668542 (S.D.N.Y.).......................................................8

*U2 Home Entertainment, Inc. v. Bowery Music City, Inc.*, 2003 WL. 22889738 (S.D.N.Y. 2003) ..............................................................................................16

# FEDERAL STATUTES

17 U.S.C. § 106(3)]................................................................................3

17 U.S.C. §106A(a)(1)(A) ...................................................................12

17 U.S.C. § 401....................................................................................9, 16

17 U.S.C. § 401(c) ..............................................................................16

17 U.S.C. § 411(a) ..............................................................................8

17 U.S.C. § 501(b) ..............................................................................9

Copyright Act, 17 U.S.C. § 106 .........................................................16

The Visual Artists Rights Act of 1990 § 603(a), 140 Stat. 5128 .......12

Defendant Luca Giussani brings this cross-motion to dismiss the Complaint for copyright infringement and unfair competition in its entirety and to vacate the temporary restraining order entered by this court on April 20, 2007.

## SUMMARY

Plaintiff's Defective Complaint Cannot Be Cured

This cross-motion to dismiss the Complaint on the following grounds: I.  Plaintiff has failed to allege that it is the owner or exclusive licensee of the copyrighted work and thus lacks standing to bring copyright infringement claims; II.  the court lacks subject matter jurisdiction over the controversy because Plaintiff has failed to allege that it has copyright registration certificates showing registration of claims in the derivative works sought to be protected by Plaintiff;  III.   Plaintiff's claim under Section 43(a) is barred by the Copyright Act.

The Temporary Restraining Order Should Be Vacated and the Injunction Denied

Plaintiff has failed to submit evidence warranting an injunction. As set forth more fully below, Plaintiff has submitted only hearsay non-expert evidence in support of its application for an injunction.  Plaintiff has submitted no evidence from persons with direct personal knowledge of Peter Beard's inventory, such as Peter Beard, Peter Tunney or Fabio Fasolini.    Plaintiff's Affidavit evidence contains admissions showing that Plaintiff believes that "Man with Crocodile" was an authentic Peter Beard work sold by Peter Tunney.

On the contrary, Defendant Giussani has presented compelling evidence that the work is genuine and documented.  Declaration of Luca Giussani dated April 30, 2007 ("Giussani Decl."). Giussani purchased "Man with Crocodile" in 1999. Giussani Decl. ¶¶ 9-17.  Giussani is an art collector who determined that the work was a Peter Beard based on his own determination based on an intimate knowledge of Peter Beard's works and style. Giussani Decl. ¶¶ 9-17.  Giussani

has an impressive professional resume including taking a NASDAQ-listed company in the United States public and running it  which shows substance, accomplishment and credibility. Giussani Decl. ¶¶ 9-11.  Giussani has shown that the Derivative Work which Mrs. Beard claims that has been infringed was published in 1999 in the book <u>Stress & Density</u>.  Giussani Decl. ¶ 10. "Man with Crocodile" bears the stamp "The Time Is Always Now, Inc." which was the corporation that exclusively represented Peter Beard until 2001.  Giussani Decl.  ¶ 14.  Most importantly, Mr. Giussani wishes to reimburse Mr. Zimmerman for the amount he paid for "Man with Crocodile". Giussani Decl. ¶ 20.  Mr. Giussani volunteers to have his attorneys hold "Man with Crocodile" at its offices until this court has an opportunity to rule which would permit Mr. Beard to assert claims in the work, if any.  Giussani Decl. ¶ 21.  As set forth more fully below, Plaintiff has failed to meet its burden to show a likelihood of success on the merits and has failed to show irreparable harm if the injunctive relief is not granted.

<u>Background</u>

 This dispute involves a large print of a photograph taken by the famous photographer and artist Peter Beard ("Beard").   In the 1990's Peter Beard made large prints of certain of his photographs that had been first published in the 1970's, many of which included scenes showing African themes.   Beard painted over the large prints and decorated the prints with spattered paint, blood, objects from nature, drawings and doodles (the "Beard Derivative Paintings").   In the late 1990's Beard had a number of exhibitions in Europe, including in Vienna and Milan. Giussani Decl. ¶ 10-11.  This controversy arises out of an attempted sale in New York of one of the Beard prints purchased by an Italian citizen in Italy in 1999.

 Even if this court decides to exercise jurisdiction, it should permit Mr. Giussani to reimburse Mr. Zimmerman the money he paid for the artwork and to store the artwork at Mr.

Giussani's counsel's office to be held at the pleasure of the court. Giussani Decl. ¶ 20.   The

Complaint alleges that Mr. Zimmerman was an innocent victim and there can be no harm to the

Plaintiff from this disposition.

## ALLEGATIONS OF THE COMPLAINT

The Plaintiff

      Peter Beard Studio LLC. ("PBSL") is a Delaware Corporation.  Cplt. ¶ 1.   PBSL is the

"exclusive representative" of the photographer and artist Peter Beard ("Beard").  Cplt. ¶ 1.

The Copyrighted Photograph

      In 1965 Beard created an original copyrightable photograph titled "The Mingled

Destinies of Man and Crocodile" ("the Beard Photograph"). Cplt. ¶ 7, 8.   Beard registered a

copyright in the book "Eyelids of the Morning" which book contained the Beard Photograph.

Cplt. ¶9.        According to the Complaint, the U.S. Copyright registration certificate bears the

number A-527582. Cplt. ¶ 9.     No copyright registration certificate was attached to the

Complaint.  No deposit material was attached to the complaint.  The Complaint does not allege a

date of first publication of the Beard Photograph.  The Complaint does not allege that the first

publication of the Beard Photograph in the United States was accompanied by a copyright notice.

Beard's Derivative Works

      Since 1965, Beard has created works of art incorporating the Beard Photograph.  Cplt. ¶

7.   The Complaint does not explain the nature of the "works of art incorporating the Beard

Photograph."   The Complaint contains no allegations that copyright registrations were sought or

refused for any "works of art incorporating the Beard Photograph."

Beard's "Exclusive Agent" Nejma Beard

      On or around February 9, 2001, Beard authorized his wife Nejma Beard to act on his behalf as his "exclusive agent" with respect to all his business affairs. Cplt. ¶ 11. Mrs. Beard conducts business as Beard's exclusive agent through Plaintiff PBSL. Cplt. ¶ 11. Mrs. Beard "handles, inter alia, all sales, commissioning and licensing of Peter Beard's works and has been very active in monitoring the market for fakes and forgeries. Cplt. ¶ 12.

Discovery of "Counterfeit" Work

      On or around April 16, 2007, Mrs. Beard discovered that Defendant Mr. Luca Giussani, a Miami citizen and resident, was offering to Defendant Arne Zimmerman, a New York citizen and resident, an artwork that Mr. Giussani called "Man with Crocodile". Cplt. ¶ 13, 2, 3. Mrs. Beard and the plaintiff's studio manager, Albina De Meio made a "personal examination" of "Man with Crocodile" and based on that "personal examination" determined that "Man with Crocodile" is "not an authentic print of the Beard Photograph, not an original Beard artwork, and not otherwise authorized by plaintiff." Cplt. ¶ 15.

Affidavit In Support of the Injunction

      In support of the injunction, Mrs. Beard explains the "work of art based on the photographic image" which forms the basis for the Complaint:

> For example, to create a work of art based on the photographic image "Mingled Destinies of Man and Crocodile," which Peter [Beard] photographed in Africa in 1965, Peter [Beard] starts with a high-quality photographic print on silver gelatin paper, which is a heavy-weight, fiber-based photographic paper. Then he adds to the print, depending on his inspiration, found objects, paint, blood, drawings, animal skins and/or inscriptions. Usually the inscriptions, drawings and signature are created with a calligraphic pen using India ink, but Peter also signs his signature in a variety of materials, such as inks (including ballpoint) and pencil according to his inspiration at the moment of signature.

Affidavit of Nejma Beard dated April 20, 2007 ("Mrs. Beard Aff.") at ¶ 12.   Mrs. Beard also

complains about the "evidence" that she claims supports the Plaintiff's claim for "copyright

infringement":

> ….I was initially surprised to see the image displayed horizontally, since it is intended to
> be viewed vertically.  I also noticed that reddish brown paint had been applied in
> uncharacteristic brush directions, and there was also a spider-like black splatter of ink in
> the middle that I have never seen on Peter's work.

Mrs. Beard Aff.  ¶ 22.   She complains that Mr. Giussani "was claiming a provenance from the

Tunney Gallery years," referring to the period in during which Peter Beard was represented by

Peter Tunney, head of The Time Is Always Now, Inc.,  Beard's exclusive agent until 2001.  Mrs.

Beard Aff.  ¶ 23.   She complains that Mr. Giussani was charging $45,000, which is less than the

price at which she sells comparable Beard artworks.  Mrs. Beard Aff.  ¶ 23.   She complains

about the paper quality.  Mrs. Beard Aff.  ¶ 24.   She complains: "I could see that the brush

direction of the reddish-brown paint is atypical, because it fans into the photograph at odd

angles."  Nejma Aff ¶ 25.   She complains about the signature's design and placement on the

photograph.  Nejma Aff ¶ 26-27.   She ridicules the "flower design drawn by the crocodile tail"

and that "the placement of snake skins is all wrong."  Mrs. Beard Aff. ¶ 28-29.   She complains

that "Man with Crocodile" has a "partial stamp from the Tunney Gallery."  Mrs. Beard Aff. ¶ 30.

There is no allegation, either in the Complaint or in the Nejma Beard Affidavit that the Tunney

Gallery stamp is not authentic.

The Elephant on The Table

Nowhere in Mrs. Beard's laundry list of complaints contained in the Complaint or

Affidavit does Mrs. Beard specifically allege that the artist Peter Beard did not actually create

Mr. Giussani's work "Man with Crocodile".   The Complaint alleges that "plaintiff" did not

authorize the artwork and that Mrs. Beard believes the work to be inferior.   Although the

Complaint clearly <u>implies</u> that Mr. Beard was not involved in the work's creation, a careful

reading of the precise language shows that the Complaint hedges its bets.   Nowhere does Mrs.

Beard specifically allege that Peter Beard's then-agent, Peter Tunney did not then stamp the back

of "Man with Crocodile" with the official stamp of "The Time Is Always Now" Gallery.

> 30. The final insult is on the back of the counterfeit, where a partial stamp from
> the Tunney Gallery appears.  See Exhibit K.  Ironically, the partial word that
> is cut off is "unlawful."

Mrs. Beard Aff. ¶ 30.

Irony aside, neither the Complaint nor Mrs. Beard's Affidavit enlighten us as to whether

she believes that Peter Tunney stamped "Man with Crocodile".   In an apparent attempt to cast

doubt on "Man with Crocodile," Mrs. Beard's Affidavit states the following:

> Just before Mr. Tunney's reign ended for good, he rented a large space in Miami for a
> party.  I did not attend, but I was told that all manner of decadent conduct manner
> occurred, including the theft of various of Peter's artworks.   Mrs. Beard Aff. ¶ 9

Thus, Mrs. Beard apparently seeks to pursue the theory that if "Man with Crocodile" was

made by Peter Beard, it must have been stolen.

The closest Mrs. Beard comes to enlightening us as to whether Peter Beard made the

work is by stating that based on her personal examination and that of her assistant "plaintiff has

determined that the Counterfeit work is not an authentic print of the Beard Photograph, not an

original Beard artwork, and not otherwise authorized by plaintiff."   Cplt. ¶ 15.

But Mrs. Beard's Affidavit confesses to us that she is incompetent to authenticate works

from the "Tunney Gallery era" prior to 2001:

> 19.   Seeing the years 2000 or 2001 meant that to us this was yet another problem, in
> addition to several others, left over from the Tunney Gallery era.  The Studio staff
> politely explained to Mr. Giussani that the Studio could not authenticate or appraise
> the unsigned works, and we decided to have nothing further to do with him.

Mrs. Beard Aff ¶ 19.

Rather than having "nothing further to do" with Mr. Giussani, Mrs. Beard apparently had a change of heart, decided that she was an expert on the dreaded "Tunney Gallery era" and decided to launch a lawsuit against him.

In a circular manner, Mrs. Beard's Complaint and Affidavit appear to define an "original Beard artwork" as set forth in the Complaint to be one that she has authorized and sold, regardless of whether Peter Beard actually created it. Nowhere does Mrs. Beard state that she consulted with Mr. Beard, Mr. Tunney, or anyone involved with Mr. Beard's exhibitions in Italy or Vienna in the late 1990's or that she has any personal knowledge of how Mr. Beard created artworks that he created and sold in Europe during the relevant period.

Scrutinizing the Complaint and Mrs. Beard's Affidavit, one is left with the distinct impression that Peter Beard, a man in full possession of his faculties who participates actively in New York City's social life, has no idea on earth that this litigation has been instituted.

Standard for Motion To Dismiss A Copyright Infringement Claim for Lack of Subject Matter Jurisdiction Pursuant To Rule 12(b)(1)

On a motion to dismiss, the Court must accept as true all factual allegations and draw all reasonable inferences in favor of the plaintiff. Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003). But the plaintiff still has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists. Lunney, 319 F.3d at 554. A district court may exercise subject matter jurisdiction if the action "arises under" federal law. Bracey v. Bd. of Educ. of City of Bridgeport, 368 F.3d 108, 123 (2d Cir. 2004). A party claiming copyright infringement must prove ownership of a valid copyright and unauthorized copying by the putative infringer. Feist Publ'n, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). To withstand a motion to dismiss, "a complaint based on copyright infringement must allege: (i) which specific original

work is the subject of the claim; (ii) that plaintiff owns the copyright in the work; (iii) that the copyright has been registered in accordance with the statute; and (iv) 'by what acts during what time' defendants infringed the copyright.    Marvullo v. Gruner & Jahr AG & Co., 2001 WL 40772 (S.D.N.Y. 2001) quoting Kelly v. L.L. Cool J, 145 F.R.D. 32, 35 (S.D.N.Y. 1992) aff'd 23 F.3d 398 (2d Cir. 1992).    Complaints that fail to meet these requirements violated Rule 8 of the Federal Rules of Civil Procedure and should be dismissed.  See, e.g., Calloway v. The Marvel Entertainment Group, 1983 WL 1141 (S.D.N.Y. 1983).

Section 411 of the Copyright Act provides:

[N]o action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title.  In any case, however, where the deposit, application and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refuses, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

17 U.S.C. § 411(a).    Cases in this district dismissing copyright infringement actions for failing to register copyright claims on 12(b)(1) motions are legion.    See, e.g. Tabachnik v. Dorsey, 2005 WL 1668542 (S.D.N.Y.)(Scheindlin, J.); Corbis v. Ugo Networks, Inc., 322 F. Supp.2d 520 (S.D.N.Y. 2004)(Rakoff, J.).

A motion to dismiss pursuant to Civil Rule 12(b)(6) must be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief."  Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

ARGUMENT

I.    The First Claim For Copyright Infringement Should Be Dismissed Because Plaintiff Lacks Standing To Bring Copyright Infringement Claims

Taking the Complaint and the Affidavit and construing them most favorably to Plaintiff Peter Beard Studios LLC, the Complaint clearly alleges that Peter Beard owns a copyright registration in a 1974 book which included a photograph that he took in 1965.  Cplt. ¶ 9.    Peter Beard is not the Plaintiff in this case. The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights.  Eden Toys, Inc. v. Florelee Undergarment Co. Inc., 697 F.2d 27 (2d Cir. 1982) citing 17 U.S.C. § 501(b).   The Second Circuit has specifically rejected suits brought by persons other than owners or exclusive licensees, stating:

> We do not believe that the Copyright Act permits holders of rights under copyrights to choose third parties to bring suits on their behalf.  While F.R.Civ.P. 17(a) ordinarily permits the real party in interest to ratify a suit brought by another party [citations omitted], the Copyright Law is quite specific in stating that only the "owner of an exclusive right under a copyright" may bring suit.

Eden Toys, 697 F.2d at 32 n. 3 citing 17 U.S.C. § 501(b); accord Silvers v. Sony Pictures Entertainment, Inc., 402 F.3d 881 (9th Cir. 2005).  The Copyright Act "does not permit copyright holders to choose third parties to bring suits on their behalf."  ABKCO Music, Inc. v. Harrisongs Music, Ltd., 944 F.2d 971, 980 (2d Cir. 1991).

Thus, Plaintiff has no standing to bring the copyright claims alleged in this action. As the Second Circuit has made very clear and the Ninth Circuit has clarified, a copyright infringement claim made by someone other than a person specified in 17 U.S.C. § 501(b) cannot be salvaged by the "real party in interest" coming to the rescue.   The copyright infringement claims must be dismissed.

9

We further note that no copyright registration certificate was annexed to the complaint.   Under the law in effect until 1988, a plaintiff had to affix a copyright notice to any work published in the United States, otherwise it entered the public domain.   17 U.S.C. § 401. The Complaint alleges that the photograph was taken in 1965, but that a registration certificate for a book including the photograph was published in 1974.   To constitute prima facie ownership of a copyright, the registration must have been filed within five years of creation of the copyrighted work.

The Complaint's allegations in support of non-party Peter Beard's copyright ownership in the Beard Photograph are insufficient to withstand a motion to dismiss.   There is no allegation that Peter Beard even has any knowledge of this lawsuit, much less has authorized it.

II.    The First Claim For Copyright Infringement  Should Be Dismissed Because The Court Lacks Subject Matter Jurisdiction Over Unregistered Copyrights In Derivative Works

The Complaint alleges that photographer Peter Beard took his own photographic works and created new artworks with them.    He put on paint, animal skins and blood and various other objects and drew all over the photographs to create new works.  Mrs. Beard Aff. ¶12.

The copyrightable expression that the Complaint complains of, as further detailed in Mrs. Beard's Affidavit  (see ¶¶ 24-30) is related almost entirely to features of these unregistered derivative works such as paint splatters, flowers drawn on the photograph, and a stylized signature.  Mrs. Beard's complaints about paint splatters, brush strokes and a "ridiculous" "flower design drawn by the crocodile tail" and the "wrong" placement of snake skins on the photograph all amount to complaints about <u>copyrightable</u> expression.  Mrs. Beard Aff. ¶¶ 25, 28, 29.   Mrs. Beard's Affidavit supplies an example of one such unregistered derivative work,

which was published in a book called "Stress & Density" in 1999.  A search of Copyright Office

records revealed no U.S. copyright registration for "Stress & Density".  The Complaint provides

no information on the copyright owner of that work.   The Complaint is void of any allegation

that Plaintiff – or anyone else – has registered such derivative works.    Mrs. Beard's Affidavit

alleges that a copyright notice from The Time Is Always Now Gallery Inc. appears on Mr.

Giussani's work. ¶ 30.   Mrs. Beard's Affidavit alleges that she "was told" that Peter Beard's

previous exclusive agent, Peter Tunney of The Time Is Always Now Gallery Inc. had a party in

Miami at which there was a theft of some of Peter Beard's works.  ¶9.[1]

Simply, put, these allegations do not meet the standard of pleading necessary to withstand

a motion to dismiss: "a complaint based on copyright infringement must allege: (i) which

specific original work is the subject of the claim; (ii) that plaintiff owns the copyright in the

work; (iii) that the copyright has been registered in accordance with the statute; and (iv) 'by what

acts during what time' defendants infringed the copyright.   Marvullo v. Gruner & Jahr AG &

Co., 2001 WL 40772 (S.D.N.Y. 2001) quoting Kelly v. L.L. Cool J, 145 F.R.D. 32, 35 (S.D.N.Y.

1992) aff'd 23 F.3d 398 (2d Cir. 1992).   The Complaint has failed to set forth any of these

allegations.


III.       Plaintiff's Second Claim Under Section 43(a) of Lanham Act
           Claim Is Barred By The Copyright Act and Should Be Dismissed

It is clear that the photograph and the paintings on photographs are within the subject

matter of Copyright.   The nature and extent of a photograph's copyright protection differs

depending on what makes the photograph original.   Mannion v. Coors Brewing Co., 377 F.

---

[1] If indeed, Mrs. Beard seeks to pursue the theory that "Man with Crocodile" is a stolen Peter Beard work, the
proper remedy would be a replevin action in New York State Supreme Court.  Under such a theory, no federal
questions arise.

Supp.2d 444 (S.D.N.Y. 2005).   A painting made on a photograph implicates different copyrightable expression.

The Complaint alleges that "Beard's artworks, and particularly those incorporating the Beard Photograph, have acquired secondary meaning and are associated by the public with Peter Beard as their source,"  Cplt. ¶  26; and that "Man with Crocodile" is grossly inferior in quality to Beard's artworks that plaintiff offers for sale."  Cplt. ¶ 30.

In Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 123 S. Ct. 2041 (2003), Justice Scalia wrote the opinion of the court analyzing a Plaintiff's attempt to use the Lanham Act to create rights in a work of visual art that had not been granted under the Copyright Act.   The court cautioned against the "misuse or overextension of trademark and related protections into areas traditionally occupied by patent or copyright."  539 U.S. at 34.   In

> When Congress has wished to create such an addition to the law of copyright, it has done so with much more specificity than the Lanham Act's ambiguous use of "origin."   The Visual Artists Rights Act of 1990 § 603(a), 140 Stat. 5128 provides that the author of an artistic work "shall have the right . . . to claim authorship of that work."  17 U.S.C. §106A(a)(1)(A).  That express right of attribution is carefully limited and focused:  It attaches only to specified "work[s] of visual art," § 101, is personal to the artist, §§ 106A(b) and (e) and endures only for the life of the author," § 106A(d)(1).  Recognizing in § 43(a) a cause of action for misrepresentation of authorship of noncopyrighted works (visual or otherwise) would render these limitations superfluous.  A statutory interpretation that renders another statute superfluous is of course to be avoided.  *E.g., Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837, and n. 11, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988).

539 U.S. at 34-35.   The court specifically rejected the type of claim that Plaintiff seeks to assert

> as used in the Lanham Act, the phrase "origin of goods" is in our view incapable of connoting the person or entity that originated the ideas or communications that originated the ideas or communications that "goods" embody or contain.  Such an extension would not only stretch the text, but it would be out of

accord with the history and purpose of the Lanham Act and inconsistent with precedent.

539 U.S. at 34-35.   The court found that permitting a claim under Section 43(a) of the Lanham Act for Dastar's representation that it was the "producer" of videos would "create a species of mutant copyright law".   539 U.S. at 34.   Once again, the Complaint fails to specifically allege that Peter Beard did not create "Man with Crocodile".   The Complaint fails to allege that Peter Beard's prior exclusive agent, Peter Tunney, did not approve and authorize the work.   The precise language of the Complaint must be analyzed:

> 28.  Plaintiff has not authorized the creation of the Counterfeit Work, nor granted to anyone the right to display, print, affix or otherwise use Peter Beard's name on or in connection with the Counterfeit Work.

> 29.  The Counterfeit Work is grossly inferior in quality to Beard's artworks that plaintiff offers for sale.

Plaintiff is a Delaware Corporation created in 2002.   The most that can be taken away from the plain language of these allegations is that Mrs. Beard believes that Peter Beard's work has vastly improved since he has come under her exclusive management.

A plain reading of Plaintiff's Second Claim for relief Cplt. ¶¶ 22-33 shows that Plaintiff seeks to assert claims specifically barred by Dastar.   Mrs. Beard opines that the signature on "Man with Crocodile" is not Peter Beard's signature and thus misrepresents the authorship of this work of visual art.   The Supreme Court correctly stated that any claims of misrepresentation of authorship of a work of visual art are governed exclusively by Section 106A of the Copyright Act, not the directly conflicting Section 43(a) of the Lanham Act. Based on the foregoing the Second Claim for Relief should be dismissed because it simply does not exist.

IV.    Even If The Court Finds That the Complaint States A Claim Under
Section 43(a) of the Lanham Act, It Should Be Dismissed Because
Plaintiff Lacks Standing

As a district court within this Circuit recently noted:

> "plaintiff has cited no case and this court has found none
> within the Second Circuit in which a court recognized a
> plaintiff's standing based on its status as a legal
> representative of the trademark holder.   However, some
> district courts, including one within the Second Circuit,
> have in dicta recognized that the legal representatives of a
> trademark holder may have standing to bring a claim under
> Sections 32 and 43 of the Lanham Act.  "A licensee may be
> considered a legal representative where the agreements
> between the parties expressly provide the licensee with a
> right and duty to sue on all issues relating to the
> trademark."

Krasnyi Oktyabr, Inc. v. Trilini Imports, 2007 WL 1017620 (E.D.N.Y. March 30, 2007)(Trager,

J.) quoting  Visa U.S.A., Inc. v. First Data Corp. 2005 U.S. Dist. LEXIS 37276 at *13-14 (N.D.

Cal. Aug. 16, 2005) and citing Siverstar Ents., Inc. v. Aday, 537 F. Supp. 236 (S.D.N.Y. 1982).

In Krasnyi, Judge Trager carefully analyzed the written agreement between the Plaintiff

and the owner of the mark to determine standing to assert Section 32 and Section 43 claims.

Here, Plaintiff fails to allege that any agreements between Peter Beard and Plaintiff Peter Beard

Studios LLC "expressly provide the licensee with a right and duty to sue".

The Complaint's sole relevant allegation is that "On or around February 9, 2001, Peter

Beard authorized his wife Nejma Beard to act on his behalf as his exclusive agent with respect to

all his business affairs.   Mrs. Beard conducts business as his exclusive agent through plaintiff."

Cplt. ¶ 11.    The Complaint fails to allege that Peter Beard has any agreement with Plaintiff.

Thus, even if, indeed, Mrs. Beard is Peter Beard's legal representative, the lack of a written

license agreement expressly granting Peter Beard Studio LLC the right and duty to sue means

that neither Mrs. Beard nor Plaintiff have standing to assert claims under Section 43(a) of the

Lanham Act.   The Complaint is unclear as to what Mrs. Beard's relationship is to Plaintiff or whether Mrs. Beard has received permission from Plaintiff's Board of Directors to initiate this litigation.

These allegations do not satisfy the "written" agreement that Judge Trager found to be required in the Second Circuit to bring a Section 43(a) claim.   Accordingly, Plaintiff's Second Claim for Relief should be dismissed for lack of standing.


> V.      The Injunction Should Be Vacated Because Plaintiff Has Failed to Make A Prima Facie Case of Copyright Ownership As An Injunction Requires and Has Failed To Submit Any Admissible Evidence Showing A Likelihood of Success on the Merits

In the Second Circuit, "[a] party seeking a preliminary injunction must demonstrate (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 192 (2d Cir.2004) (internal quotation marks and citation omitted); accord Bose Corp. v. Silonsonnic Corp., 413 F. Supp.2d 339 (S.D.N.Y. 2006)(Haight, J.).   In addition, the party seeking the injunction must satisfy a higher standard, by showing a clear or substantial likelihood of success, where (i) the injunction sought is "mandatory"-i.e., it will "alter, rather than maintain, the status quo," or (ii) the injunction, whether or not mandatory, "will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." Tom Doherty Assoc., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 33-34 (2d Cir.1995); see also Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir.2004).

Public policy does not advocate the liberal issuance of preliminary injunctions in copyright

infringement actions.  Nintendo of America, Inc. v. Lewis Galoob Toys, Inc., 16 F.3d 1032,

1038 (9th Cir. 1994).  The plaintiff's burden of showing a likelihood of success on the merits

includes the burden of showing a likelihood that it would prevail against any affirmative

defenses raised by the defendant.  Perfect 10 v. Google, Inc., 416 F. Supp.2d 828 (C.D. Cal.

2006).

> Impoundment of items that allegedly infringe plaintiff's rights
> under the Copyright Act, 17 U.S.C. § 106 is appropriate if plaintiff
> establishes a prima facie case of copyright infringement, and
> therefore demonstrates a likelihood of success on the merits.  A
> prima facie case of copyright infringement can be established by
> offering evidence of ownership of valid copyrights, and alleging
> that defendant violated an exclusive right conferred by that
> ownership.

U2 Home Entertainment, Inc. v. Bowery Music City, Inc., 2003 WL 22889738 (S.D.N.Y. 2003).

> a.    Plaintiff Has No Standing and Is Entitled To No Statutory
>       Presumption of Irreparable Harm

To establish evidence of copyright ownership, Plaintiff must prove (1) ownership of the

copyright; and (2) infringement – that the defendant copied protected elements of the plaintiff's

work.  Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481 (9th Cir. 2000).  Plaintiff is not

alleged to be the owner, author, or exclusive licensee of the Beard Photograph.  But even

assuming *arguendo* that Plaintiff were the author, the Complaint fails to allege and the evidence

submitted in support of the injunction fails to set forth a *prima facie* case of copyright ownership.

Plaintiff failed to produce a copyright registration certificate.  The certificate alleged to exist

was issued in 1974, nine years after the Photograph was created.  A copyright certificate creates

*prima facie* evidence of ownership only if filed within five years of publication.  17 U.S.C. §

401(c).  There is no allegation in the Complaint or in Mrs. Beard's Affidavit regarding the date

of the photograph's first publication, nor whether the first publication complied with statutory copyright notice requirements. 17 U.S.C. § 401 (requiring copyright symbol and name of author on first publications prior to 1988). Finally, there is no registration alleged of the Derivative Works which are alleged to be infringed. Thus, Plaintiff is entitled to no presumption of irreparable harm by the workings of the Copyright Act.

     b. Plaintiff Has Failed to Show Any Likelihood of Success on the Merits or Irreparable Harm

  In opposition to Plaintiff's application for a Preliminary Injunction, Defendant Luca Giussani has submitted a Declaration dated April 30, 2007 based on personal knowledge. Contrary to Mrs. Beard's claim that she is Peter Beard's exclusive representative, Mr. Giussani has submitted evidence showing that Peter Beard had an agent named Fabio Fasolini in Italy during the relevant time period who appears to still be acting on Peter Beard's behalf in Italy. Giussani Decl. ¶ 11. After a thorough investigation, Mr. Giussani acquired the work in 1999 from Mario DiBenedetto who had acquired the work from Peter Tunney and Peter Beard during a stay in Europe in connection with a 1997 exhibition of Peter Beard's works in Milan, Italy. Giussani Decl. ¶ 9-16. Mr. Giussani is an accomplished art collector. Giussani Decl. 3-8. His personal inspection of the work showed it to be an authentic Peter Beard. Giussani Decl. 9-17. He purchased the artwork from an Italian citizen named Mario DiBenedetti who was a friend of Peter Beard when Mr. Beard came to Europe to work and exhibit his artworks in Milan. Giussani Decl. 9-17. The work "Man with Crocodile" bears the copyright notice of The Time Is Always Now Gallery Inc. Giussani Decl. ¶ 14. Mr. Giussani knew at the time that Peter Beard was represented exclusively by Peter Tunney of The Time Is Always Now Gallery Inc. Giussani Decl. ¶ 9-17. Mr. Giussani states affirmatively that there is no "market" in counterfeit Peter

Beard artworks and that he has received such assurances through his representatives in the art world.  Giussani Decl. ¶ 16.  Mr. Giussani is willing to place "Man with Crocodile" in safekeeping at his attorneys' offices until this or any other court rules on the work's authenticity and that he is ready, willing and able to call in experts to authenticate the artwork. Giussani Decl. ¶ 19.  With the court's permission, Mr. Giussani wishes to reimburse Mr. Zimmerman the remaining $15,000 of the $45,000 sale price he obtained for "Man with Crocodile". Giussani Decl. ¶ 20.

In contrast, the Complaint does not even allege copyright registrations in works that are clearly stamped with copyright notices bearing the notice "The Time Is Always Now Gallery Inc."   In support of its assertions that "Man with Crocodile" is not authentic, Plaintiff offers only the "personal examination" of two persons who are not even alleged to be art experts.  See Baker v. Urban Outfitters, Inc., 254 F. Supp.2d 346 (S.D.N.Y. 2003)(excluding witness testimony in copyright action where 1. witness failed to qualify as expert and 2. scientific, technical or other specialized testimony not relevant or reliable).  Neither person is alleged to have personal knowledge of the inventory of works created by Peter Beard.   Mrs. Beard's opinion lacks the independence and reliability necessary to admit her testimony as that of an expert in support of injunctive relief because she is Peter Beard's wife who runs an art gallery that competes with Mr. Zimmerman's sales of Peter Beard works and with Mr. Giussani's attempted sale of a work she deems inferior to her inventory.

A quick check on the internet shows that Studio FP claims to be Peter Beard's agent in Italy. http://www.studiofp.com/home.swf.  Compare Giussani Decl. ¶ 11 (annexing printout showing Peter Beard's agent in Italy).  This evidence contradicts Mrs. Beard's claim, unsupported by any written evidence, that she is Peter Beard's exclusive agent.  Mrs. Beard's

Affidavit is pure self-serving hearsay and should be excluded from the court's consideration under Rule 801 of the Federal Rules of Evidence.  None of the Exhibits have been properly authenticated and should be excluded under Rule 901 of the Federal Rules of Evidence.  Indeed, there is no showing that Mrs. Beard or her counsel even minimally complied with Rule 11 of the Federal Rules of Civil Procedure by asking Peter Beard or Peter Tunney or <u>anyone</u> familiar with Peter Beard oeuvre of the 1990's such as Mr. Beard's representative in Italy whether they recall the circumstances of the making of "Man with Crocodile".

In addition to a complete lack of evidentiary support, the case law cited by Plaintiff does not support awarding  the relief sought.  In support of the injunction, Plaintiff relies on <u>King v. Innovation Books Corp.</u>, 976 F.2d 824 (2d Cir. 1992).  In <u>King</u>, the Second Circuit upheld Judge Motley's injunction in favor of writer Steven King whose name was being used in advertising a film without his permission.   Notably, <u>Mr. King </u>was the plaintiff in that action and his name was being used in <u>advertising</u>, which falls under the Lanham Act.   Neither of these key facts are present here, Mr. Beard is not a plaintiff and his name is not alleged to be used in advertising any products in U.S commerce.

The movant's citation to <u>First Technology Safety Systems, Inc. v. Depinet</u>, 11 F.3d 641, 648 (6th Cir. 1993) for the proposition that "Man with Crocodile" should be turned over to Plaintiffs is misleading.   In <u>First Technology</u>, the Sixth Circuit held that a district court did not abuse its discretion by permitting a law firm to hold items in trust for the court.   However, the Sixth Circuit found that the district court abused its discretion in issuing an *ex parte* order of inventory and impoundment and then abused its discretion by denying the defendant's motion to vacate that *ex parte* order.  11 F.3d at 652.   Notably, the Sixth Circuit agreed in that case with

the Second Circuit's standard for the heavy, heavy burden placed upon a Plaintiff seeking an *ex parte* restraining order:

> Showing that the adverse party would have the opportunity to conceal evidence is insufficient to justify proceeding ex parte. If it were, courts would be bombarded with such requests in every action filed. The applicant must show that the adverse party is likely to take the opportunity for such deceptive conduct. Plaintiff contends that "the character of defendants' activities" shows that defendants were likely to conceal evidence. Plaintiff was seemingly referring to defendants' having allegedly unlawfully usurped plaintiff's business opportunities and allegedly violating their confidentiality agreements. **These allegations are insufficient. Plaintiff did not show that defendants, or persons involved in similar activities, had ever concealed evidence or disregarded court orders in the past.**

11 F.3d at 650-651 (emphasis supplied) <u>discussing</u> <u>In re Louis Vuitton et Fils S.A.,</u> 606 F.2d 1 (2d Cir. 1979).

The instant facts are similar to those in <u>First Technology</u>. Neither Mr. Zimmerman nor Mr. Giussani is alleged to have concealed evidence or disregarded court orders in the past. Thus, following the Sixth Circuit, this court's *ex parte* restraining order was obtained improperly and should be dissolved for Plaintiff's failure to comply with Rule 65(b) of the Federal Rules of Civil Procedure.

   c. Defendant Giussani Shows A Strong Likelihood of Prevailing the Affirmative Defense of the First Sale Doctrine

Mrs. Beard's Affidavit contains numerous (seemingly gratuitous) attacks on Peter Beard's prior agent, Peter Tunney. These portions of Mrs. Beard's Affidavit are admissions against interest and thus an exception to the hearsay rule under Rule 801 of the Federal Rules of Evidence. There is reference to Plaintiff being sued by Peter Tunney on numerous occasions. Mrs. Beard Aff. at ¶¶7, 8. There are numerous claims that Peter Tunney engaged in "financial and other abuses" and allowed Peter Beard works to be stolen. Mrs. Beard Aff. at ¶ 8. Peter

Tunney is alleged to have held a "decadent" party in Miami, after which Peter Beard artworks went missing. Mrs. Beard Aff. at ¶ 9.

It is clear that Mrs. Beard's true dispute, and numerous litigations are with Peter Beard's prior agent, Peter Tunney.   A careful reading of her affidavit shows that Mrs. Beard's considers herself to be incompetent to authenticate works created during the "Tunney Gallery era",  Mrs. Beard Aff. ¶ 19, and that her alternative theory is that "Man with Crocodile" was an authentic Peter Beard work from Peter Beard that was put on the market by Peter Tunney.   This theory conflicts 100% with her claims that the work is counterfeit.

Section 109 of the Copyright Act provides that "[n]otwithstanding the [copyright owner's exclusive right to distribute copies granted by 17 U.S.C. § 106(3)], the owner of a particular copy or phonorecord lawfully made .. . is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord." Bourne v. Walt Disney Co., 68 F.3d 621 (2d Cir. 1995).

Based on Mrs. Beard's Affidavit and Mr. Giussani's Declaration, it becomes clear that the only admissible evidence proferred by Mrs. Beard demonstrates she has no idea what happened, conducted no investigation, and suspects that Peter Beard probably made the work, that Peter Tunney probably stamped it with the Time Is Always Now Gallery Inc.'s copyright notice.  Accordingly, Defendant Giussani is overwhelmingly likely to prevail on a "first sale doctrine" defense if and when a copyright holder ever asserts a claim against him.

VI.     In The Alternative, An Evidentiary Hearing Should Be Scheduled and
        Plaintiff's Injunction Bond Should Be Increased To At Least $150,000

If genuine issues of fact are created by the response to a motion for a preliminary injunction, an evidentiary hearing is required.   Ty, Inc. v. GMA Accessories, Inc., 132 F.3d

1167, 1171 (7th Cir. 1997).  Upon converting a temporary restraining order to a preliminary

injunction, courts will ordinarily increase the bond amount to protect the defendant.  See,

e.g., Sunham Home Fashions, LLC v. Pem-America, Inc., 2002 WL 31834477 at *10

(S.D.N.Y. 2002) aff'd, 83 Fed Appx. 369 (2d Cir. 2003).   In the absence of a bond, a party

wrongfully enjoined has no remedy for wrongful injunction and such remedy ordinarily is

capped at the amount of the bond.  Gametech Intern., Inc. v. Trend Gaming Systems, L.L.C.,

2005 WL 1473982 (D. Ariz. 2005).   A party is "wrongfully enjoined" under Fed. R. Civ.

Proc 65(c) if it is ultimately found that the enjoined party had at all times the right to do the

enjoined act.  Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049,

1054 (2d Cir. 1990).

Mrs. Beard estimates that "Man with Crocodile" is worth up to $70,000.   Mr. Giussani

has already lost a $45,000 sale of the work based on the groundless slanders and gratuitous

abuse contained in Mrs. Beard's Affidavit.   An evidentiary hearing and hiring experts will

easily cost $80,000 in expert and legal fees.   Accordingly, the Plaintiff should be required to

post an injunction bond of not less than $150,000 pending an evidentiary hearing on the

propriety of an injunction.

CONCLUSION

For the reasons set forth above, the First and Second Claims for Relief together with the

balance of the Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of subject

matter jurisdiction and pursuant to Rule 12(b)(6) based on Plaintiff's lack of standing to assert

those claims.   Because Plaintiff has failed to put forward any competent evidence showing an

entitlement to a preliminary injunction and because Defendant Luca Giussani has shown by

admissible evidence that he is likely to prevail on the merits, the temporary restraining order

should be vacated.   In the alternative, Plaintiff should be required to post an injunction bond of

not less than $150,000.

Dated:        New York, New York
              April 30, 2007

                                        **DUNNINGTON, BARTHOLOW &
                                        MILLER, LLP**


                              _____/s/_____
                              By:    Raymond J. Dowd (RD-7508)
                                     *Attorneys for Defendant Luca Giussani*
                                     477 Madison Avenue, 12th Floor
                                     ÿÿÿÿÿNew York, New York 10022
                                     Tel: (212) 682-8811
                                     rdowd@dunnington.com