```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------- x

PETER BEARD STUDIO, LLC,            :
                                        07 Civ. 3184 (LLS)
            Plaintiff,              :

      v.                            :   AFFIDAVIT IN SUPPORT OF
                                        MOTION TO INTERVENE AND
LUCA GIUSSANI and ARNE ZIMMERMAN,   :   IN OPPOSITION TO MOTION
                                        TO DISMISS COMPLAINT
            Defendants.             :   AND VACATE TRO

------------------- x

STATE OF NEW YORK    )
                     : ss.:
COUNTY OF NEW YORK   )
```

PETER HILL BEARD, being duly sworn, states:

1. I am an artist, photographer and writer, and the sole owner of the Peter Beard Studio, LLC, the plaintiff. I have read the affidavit submitted by Luca Giussani. I submit this affidavit, based on my personal knowledge, in opposition to Mr. Giussani's cross-motion to dismiss the Studio's lawsuit to stop flagrant forgeries of my work.

2. The print that Mr. Giussani was trying to sell to Arne Zimmermann is one of a group of preposterous put-togethers -- very sloppy and very badly done -- that have been suddenly appearing on the market. I would like to adamantly record my shock at this series of blundering imitations that are so embarrassingly stupid

that I pray not to have ever known or associated with the "creators" of these things.

3. And then to read Mr. Giussani's affidavit adamantly backing it all up with admiring expressions of enthusiasm as if on a fan club level; how could anyone with the slightest familiarity with my work fail to recognize this piece as a forgery?

4. My sincere prayer is that I don't know the people who are behind this, because the advocacy on behalf of such brazen fakes is very insulting behavior. As Arne Zimmermann immediately saw, it's a blatant and unaesthetic attempt to copy. My lawyers have explained that I have to give the Court many more details, but I wanted to say this first.

## My Motion to Intervene

5. I am moving to intervene in the litigation as a co-plaintiff with the Studio. The proposed amended complaint is attached as Exhibit A.

6. Contrary to Mr. Giussani's insinuations, the Studio is not only authorized to bring infringement lawsuits on my behalf, but I rely on it to do so. But to dispose of any technical issue that could distract from the real issue here, I should be a plaintiff.

## Background

7. For over five decades, I have worked and traveled extensively in Africa, photographing wildlife and assisting in

conservation efforts. In the 1960s, I documented the destruction of the habitat and subsequent demise of the elephant and black rhinoceros populations in two editions of my book *The End of the Game*, which was published in 1965 and 1977.

### Creation of "Mingled Destinies"

8. In the mid-1960s, a conservation consultant by the name of Alistair Graham and I made an expedition to Lake Rudolph in Kenya, East Africa, for the Kenya game department. We studied the dwindling Nile crocodile population there and the crocodile's relationship with humans over the centuries.

9. I created thousands of photographs during this expedition, including the photograph that is appropriated in Mr. Giussani's piece. I call it "The Mingled Destinies of Crocodile and Man," from the title of the book Alistair and I later created about our expedition, *Eyelids of Morning: The Mingled Destinies of Crocodiles and Men* (which I will refer to as *Eyelids*).

### First Publication of the Photograph

10. Although I created "Mingled Destinies" in 1965, I did not publish it until it was included as an illustration in *Eyelids*, which was published in December 1973. I had not sold "Mingled Destinies" in fine-art prints or otherwise before then. My very first photography exhibition, at the Blum Helman Gallery in New York City, was not until 1975.

### Copyright Registration

11. I am the sole owner of the copyright in each of the photographs by me that appeared as illustrations in *Eyelids*, including "Mingled Destinies." A copy of the relevant certificate of registration, dated January 11, 1974, and numbered A-527582, is attached as Exhibit B. This registration was referred to in the Studio's complaint, in paragraph 9.

### Artworks Created with "Mingled Destinies"

12. For many years, I have created works that use prints of my photographs as a "canvas," on to which I add various materials -- paint, blood, ink, other photographs, drawings, found objects, driftwood, bones and animal skins, just to name a few -- in order to create unique monoprints or collages.

13. I often reuse the same photographic image over and over in order to create new works of this type. I have created a number of such works with the photograph "Mingled Destinies." Works by me featuring this image have appeared in the following art books: *Eyelids of Morning* (1973); *Photo Poche* (1996); *Oltre la fine del Mondo* (1997); *Fifty Years of Portraits* (1999); *Stress and Density* (1999); and *Peter Beard: Taschen Artist's Edition* (2006); as well as in a biography of me by Jon Bowermaster, entitled *The Adventures and Misadventures of Peter Beard In Africa* (1993).

14. The crux of the Studio's and my complaint is that Mr. Giussani's piece is a third-party's creation of a hideous work purporting to be mine. It uses as a "canvas" a copy of my copyrighted photograph that is so badly pixilated it looks like barbed wire. I have never worked on anything that looks like this print. Then there is the pathetic addition of materials coupled with juvenile drawings and cheap splotches. The handwriting is so absolutely far from mine that it is obviously a hideous fake.

15. Mr. Giussani is misinformed about what was and was not lost in a fire that destroyed my home in Montauk, New York. I lost very few negatives in that fire and "Mingled Destinies" is not one of them. The Studio has the negative of the "Mingled Destinies" photograph; in fact, we just made a print from it about six months ago for a new work I created.

### Other Works Being Peddled by Mr. Giussani

16. I have read the January 2007 emails from Mr. Giussani to the Studio, asking it to provide certifications for two unsigned artworks he attributes to me. I have also looked at plain-paper images of the two works printed from scans Mr. Giussani sent to the studio.

17. In over 40 years as a professional photographer and artist, I have never sold or authorized the sale of any work of mine without my signature on it. An unsigned work of mine is not recognized by me as an authentic, final artwork, and therefore is

without market value.  To my knowledge, there have been at most two or three times that a gallery made a sale of an unsigned work of mine, in error.

18. On that basis alone, it makes perfect sense that the Studio was not willing to have anything more to do with Mr. Giussani when he tried to tell them these were legitimate works.

19. When I examined the scan more carefully of the work with the little gorilla, I was really horrified, because it appears to be the very same image that is in my Vienna catalog *Stress and Density* -- except there are some small ways that it appears "off." It is possible that an illustration in one of my books would not be signed because none of the works were for sale -- but that wouldn't explain the ways that it appears to be slightly, strangely different from the original.  Unfortunately, unless I can see the original, I cannot be more specific.

### The Italy Connection

20. In 1997, an exhibition of my artworks entitled *Oltre la fine del mondo* (*Beyond the End of the World*) opened in Milan, Italy, at the Palazzo Reale.  The exhibition included a work by me based on the "Mingled Destinies" image.  The book having the same title as the exhibition served as its catalogue and contains a reproduction of the "Mingled Destinies."

21. Also in 1997, my works were exhibited at the Galleria Photology, a private art gallery in Milan, Italy. And of course the other books I listed above are generally available in Italy.

### Creation of the Studio LLC

22. After years of working with sales agents and art galleries to represent my work, in early 2001 I established the Peter Beard Studio, LLC, to handle all aspects of my business as an artist. My intention was to gain more control over my inventory of works and their sale and exploitation.

23. The Studio acts as a production company in connection with the creation of my works, stocking the art supplies I need, obtaining the prints of my photographs and the other creative materials I require, and providing space for me to work. It also manages my archive, my negatives, and my extensive personal collection of self-created works, diaries and writings.

24. Most important, the Studio acts as my representative for the marketing and sale of my original works (including managing my worldwide network of art dealers), the handling of photographic or artwork commissions and assignments, and the managing the licensing and other exploitation of my copyrights, trademarks and other property rights in my works and in my name and likeness.

25. I am the president and sole owner of the Studio, and the Studio's activities are subject to my oversight. However, the

Studio is managed on a day-to-day basis by my wife, Nejma Beard, who is an officer of the Studio.

26. Over the 20 years that Nejma and I have been married, Nejma has supported and assisted me with my work. As a result, she has developed an extensive and detailed knowledge of my work and how I create it. I believe her expertise in this regard, and in particular her ability to determine the authenticity of works attributed to me, is second only to my own.

27. I have read Nejma's affidavit that was submitted in support of the Studio's motion for a TRO and preliminary injunction. She is absolutely right in her analysis of things that are wrong about Mr. Giussani's piece.

### Termination of Tunney and Fasolini

28. With the Studio in place, on July 5, 2001, I terminated Peter T. Tunney, and his Soho art gallery, The Time Is Always Now, Inc. (the "Tunney Gallery"), as my sales representative for the sale and exhibition of my art. The termination was difficult and litigation ensued, but the upshot is that the Tunney Gallery and its employees have nothing more to do with my artworks.

30. Fabio Fasolini, through his company Studio FP, acted for some years as my non-exclusive sales representative in Italy for commercial licensing matters and commercial photography commissions. His representation was terminated, however, in April 2005, and we have not worked with him since that time. The Studio and our general counsel at Stout, Thomas & Johnson have repeatedly told him to remove my name from his website. If it is still on the website or if he is claiming he is a sales agent, it is definitely without our authorization.

_____
Peter Hill Beard

Sworn to before me this
3rd day of May, 2007.

_____

DEBRA A. MAYER
Notary Public, State of New York
No. 02MA6033137
Qualified in New York County
Commission Expires November 15, 2008

- 9 -