TABLE OF CONTENTS

                                                         Page

Table of Authorities ................................................ ii

Statement of Facts .................................................. 2

Argument ............................................................ 3

I.    PETER BEARD'S INTERVENTION
     IS MANDATORY AND COMPLIES
     WITH RULE 24 .............................................. 3

II.   GIUSSANI'S MOTION TO DISMISS,
     BY WHICH HE WOULD HOLD ON TO
     HIS COUNTERFEIT "ARTWORK," IS
     BASED ON FALSE TECHNICALITIES
     AND SHOULD BE DENIED ..................................... 4

     A.  Standing Exists under
         the Copyright Act ................................... 4

     B.  The Trademark Claim, Since
         It Protects Different Rights,
         Is Not Preempted .................................... 7

III.  THE TEMPORARY RESTRAINING
     ORDER SHOULD CONTINUE IN PLACE ........................... 11

     A.  Defendant Misstates the
         Standards for a TRO ................................ 11

     B.  Plaintiff Has Met the
         Governing Standard ................................. 12

IV.   THE $10,000 BOND PROVIDES
     AMPLE SECURITY ........................................... 14

Conclusion ......................................................... 17

TABLE OF AUTHORITIES

**Cases**

ABKCO Music, Inc. v. Stellar Records, Inc.,
  96 F.3d 60 (2d Cir. 1996)..................................12, 13

AIM International Trading LLC v.
  Valcucine SpA, 188 F. Supp. 2d 284
  (S.D.N.Y. 2002)...............................................11

American International Pictures, Inc.
  v. Foreman, 576 F.2d 661 (5th Cir. 1978).....................14

Apul Fruitconsult AG v. Amodess J.V.,
  1997 WL 777935 (E.D.N.Y.
  Oct. 17, 1997)...............................................17

B.G. Soft Ltd. v. BG Soft International,
  Inc., 2002 WL 1467744 (E.D.N.Y.
  April 29, 2002)..............................................17

Blumenthal v. Merrill Lynch, Pierce,
  Fenner & Smith, Inc., 910 F.2d 1049
  (2d Cir. 1990)...............................................15

Dastar Corp. v. Twentieth Century Fox
  Film Corp., 539 U.S. 23 (2003)........................8, 9, 10

Eden Toys, Inc. v. Florelee Undergarment Co.,
  697 F.2d 27 (2d Cir. 1982)..............................5, 6, 7

Interlink International Financial Services,
  Inc. v. Block, 145 F.
  Supp. 2d 312 (S.D.N.Y. 2001).................................14

Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,
  596 F.2d 70 (2d Cir. 1979)...................................11

Kenbrooke Fabrics, Inc. v. Soho Fashions,
  Inc., 690 F. Supp. 298 (S.D.N.Y. 1988)........................7

Louis Vuitton Malletier v. Dooney &
  Bourke, Inc., 454 F.3d 108 (2d Cir. 2006)....................11

Microsoft Corp. v. Harmony Computer &
  Electronics, Inc., 846 F. Supp. 208
  (E.D.N.Y. 1994)..........................................13, 14

MyWebGrocer, LLC v. Hometown Info, Inc.,
   375 F.3d 190 (2d Cir. 2004)..................................12

Tom Doherty Associates v. Saban
   Entertainment, Inc., 60 F.3d 27
   (2d Cir. 1995).............................................11

**Statutes**

13 Moore's Federal Practice [3d. ed.
   1997] .....................................................14

U.S. Copyright Act, 17 U.S.C. § 106(3) ........................13

U.S. Copyright Act, 17 U.S.C. § 501(b) .......................3-4

U.S. Lanham Act, 15 U.S.C. 1051 et seq........................8, 17

**Legislative Materials**

H. Rep. No. 94-1476, 94th Cong., 2d Sess.
   1976........................................................4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
PETER BEARD STUDIO, LLC,          :
                                       07 Civ. 3184 (LLS)
            Plaintiff,            :

        v.                        :

LUCA GIUSSANI and ARNE ZIMMERMAN, :

            Defendants.           :
- - - - - - - - - - - - - - - - - x

MEMORANDUM OF LAW IN SUPPORT OF
PETER BEARD'S MOTION TO INTERVENE AND
IN OPPOSITION TO DEFENDANT'S CROSS-
MOTION TO DISMISS THE COMPLAINT,
VACATE THE TEMPORARY RESTRAINING ORDER,
OR INCREASE THE INJUNCTION BOND

At issue here is the bona fides of a photographic work that defendant Luca Giussani* has represented to be the creation of the artist Peter Beard. Both Nejma Beard, the artist's wife (who runs Peter Beard Studio LLC) and the artist himself -- who has asked to join the lawsuit as a plaintiff -- have personally examined Giussani's piece. They have concluded unequivocally that it is, in Mr. Beard's words, a "hideous fake."

To permit defendant to pass off this highly pixilated photograph sloppily coated in blood, ink splatters and juvenile drawings as a legitimate Beard artwork will cause incalculable,

---

\* Since Arne Zimmerman has been voluntarily dismissed from the case, all references in this brief to "defendant" are to Luca Giussani.

irreparable harm to Beard's reputation. It will sow confusion and diminish confidence in his market, and usurp the goodwill that the Studio has invested heavily to establish among collectors, curators and critics.

This threatened injury far outweighs any harm to defendant in having his trafficking in a counterfeit temporarily halted. There is no reason to expect the market for Peter Beard's works to plummet during the period of time that this matter is <u>sub judice</u>. Defendant's interests are more than adequately protected by the $10,000 bond that was duly posted by the Studio pursuant to this Court's order.

### Statement of Facts*

Defendant offered for sale what he claimed was a silver gelatin artwork attributed to Peter Beard earlier this Spring over the Internet. (Zimmermann Decl. ¶¶ 4, 9.) Arne Zimmermann, a New York City art dealer who collects and sells Beard works, responded to defendant's offer. After several communications between them, Zimmermann arranged in mid-April to purchase the piece, sight unseen. (Id. ¶ 7.) When he saw the work in person, on April 16, 2007, he discovered that it was not a silver gelatin print, but a print on RC paper, of much lesser

---

* The facts are set forth in the declaration of Arne Zimmermann, dated May 3, 2007 ("Zimmermann Decl.") and the affidavit of Peter Hill Beard ("P. Beard Aff."), sworn to on May 3, 2007, both submitted in opposition to Giussani's cross-motion, and the affidavit of Nejma Beard ("N. Beard Aff."), sworn to on April 20, 2007, submitted in support of plaintiffs' motion.

quality. (Id. ¶ 11.) He stopped payment on his check and, bothered by other aspects of the work, he alerted the Studio. (Id. ¶ 14.)

This action was commenced after Mrs. Beard examined the piece and concluded it was a counterfeit. (N. Beard Aff. ¶¶ 14-29.) As Mr. Beard has explained, contrary to the aspersions defendant casts on Mrs. Beard (Def. Br. 6, 18), she is amply qualified to have made that evaluation. (P. Beard Aff. ¶¶ 6, 24-27.) In any case, Mr. Beard has since independently arrived at the self-same conclusion. (Id. ¶¶ 2, 14.)

## Argument

### POINT I

### PETER BEARD'S INTERVENTION IS MANDATORY AND COMPLIES WITH RULE 24

Pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, intervention as of right is warranted upon a timely application when either a federal statute confers an unconditional right to intervene or the applicant has a sufficient interest in the action. Mr. Beard's application is timely, coming a mere two weeks after the complaint was filed and in advance of the preliminary injunction hearing. In addition, both of the two, alternative grounds are present here.

Mr. Beard's unconditional right to intervene arises pursuant to section 501(b) of the U.S. Copyright Act, 17 U.S.C. § 501, which provides in pertinent part that the Court "shall

- 3 -

permit the intervention, of any person having or claiming an interest in the copyright." (Emphasis added.) Additionally, as the owner of the intellectual property at the heart of this action, Mr. Beard has a direct, substantial and legally protectible interest at stake.

The notes from the Committee on the Judiciary when adopting the Copyright Act make it crystal clear: if any person having or claiming an interest in a copyright "wishes to become a party, the court must permit that person's intervention." H. Rep. No. 94-1476, 94th Cong., 2d Sess. 1976, reprinted in 17 U.S.C.A. § 501, Historical and Statutory Notes, 1976 Act (emphasis added).

POINT II

GIUSSANI'S MOTION TO DISMISS, BY WHICH HE WOULD HOLD ON TO HIS COUNTERFEIT "ARTWORK," IS BASED ON FALSE TECHNICALITIES AND SHOULD BE DENIED

A. Standing Exists under the Copyright Act

To avoid any technical standing argument that might distract from the merits of the claims, Peter Beard, as the undisputed owner of the copyright in the photograph that is the "canvas" for defendant's counterfeit, has moved to intervene as a plaintiff. Since Mr. Beard's motion should be granted for the reasons discussed above in Point I, defendant's lack of standing argument is moot.

- 4 -

In any event, for his standing argument, defendant stumbles because of his undue focus on the fact that the Studio is neither the copyright owner nor an exclusive licensee. Defendant asserts that, as a third party, the Studio lacks standing. First, the Studio is hardly an arm's-length third party: it is owned 100% by Mr. Beard and is fully authorized by him to license and enforce his intellectual property rights. (P. Beard Aff. ¶¶ 22, 24-25.)

In any case, defendant is dead wrong to contend, without authority, that the copyright owner cannot rescue the claim. (Def. Br. 9.) The contrary was held in the very case on which defendant so heavily relies. Eden Toys, Inc. v. Florelee Undergarment Co., 697 F.2d 27 (2d Cir. 1982) (Def. Br. 9-10), was brought by a licensee of the owner of the "Paddington Bear" copyright against an infringer selling gift wrap with the Paddington character on it. An issue arose as to whether plaintiff was the exclusive licensee as to the particular right that was infringed, and thus a proper party to pursue the copyright claim. Defendant cites to a footnote in Eden Toys decision* for the proposition that the Studio lacks standing, but in the meantime loses sight of the holding of the case.

---

\* That footnote reads in relevant part:

> . . . We do not believe that the Copyright Act permits holders of rights under copyrights to choose third parties to bring suits on their behalf. While F. R. Civ. P. 17(a) ordinarily permits the real party in interest to ratify a suit brought by another party], the Copyright Law is quite specific

It was unclear to the Second Circuit whether the plaintiff was in compliance with the statutory requirements of an exclusive licensee under the Copyright Act. It concluded that this was immaterial to resolve; for even if it had not complied, the equities were nonetheless "heavily" in its favor. That was because, exactly like here, the plaintiff had no dispute with the copyright owner, and the owner was willing to join as a plaintiff. Id. at 37.

The Court held that, when a technical standing issue arises under the Copyright Act, the copyright owner can and should intervene as a plaintiff -- that, indeed, "it would be unjust to deny redress to [a licensee plaintiff] because of an easily remediable procedural defect." Id. at 37 (emphasis added).

As the Court explained, the statutory purpose behind the Copyright Act's exclusive-licensee standing requirements is to protect the copyright owner from persons mistakenly or fraudulently claiming oral licenses -- not to provide an infringer a technical weapon in litigation. Id. at 36. The Court's words in rejecting the infringer's standing argument could not ring truer here:

---

(footnote continued from previous page)

    in stating that only the "owner of an exclusive
    right under a copyright" may bring suit.

Eden Toys, 697 F.2d at 32 n.3 (citing 17 U.S.C. § 501(b)).

> [I]t would be anomalous to permit a third party infringer to invoke this provision against the licensee.

Id. at 36. Accord Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc., 690 F. Supp. 298 (S.D.N.Y. 1988).

Defendant also makes a confusing argument about possible unregistered copyrights in Beard's derivative works that incorporate his photographic images. (Def. Br. 10-11.) The discussion is a complete red herring. It is true that Beard creates unique artworks that use his photographs as a "canvas," and he has done so numerous times with "Mingled Destinies." (P. Beard Aff. ¶¶ 12-13.) Regardless of whether or not he has registered those derivative works, no one is suggesting that defendant's counterfeit is a copy of any of them.

Rather, as stated during the hearing on the order to show cause, the claim brought against defendant is based on the copying of the underlying Beard work -- the photograph itself -- on to which someone other than Beard affixed his or her own additions. (P. Beard Aff. ¶ 14.)

The only derivative work at issue here is the one defendant is peddling -- which was not authorized by the copyright owner of the underlying work, "Mingled Destinies."

B.  The Trademark Claim, Since
    It Protects Different Rights,
    Is Not Preempted

As noted above, plaintiffs' copyright claim seeks to enforce their rights in the underlying photograph that was used to create the work offered for sale over the Internet by

- 7 -

defendant. The second claim in the complaint, brought pursuant to the U.S. Lanham Act, is a classic "passing off" claim, seeking redress for defendant's use of Beard's name and the distinguishing characteristics associated with Beard works in order to sell a work created by someone else.

Again, one need look no farther than defendant's own case authority, <u>Dastar Corp.</u> v. <u>Twentieth Century Fox Film Corp.</u>, 539 U.S. 23 (2003) (Def. Br. 12-13). In order to create a video boxed set about World War II, Dastar Corp. used an old Fox television series on which the copyright had expired. Dastar made some edits so as to shorten the series to to approximately half the length of the original television broadcast, then released it for sale. In its marketing of the video set, Dastar truthfully named itself as the producer of the boxed video programs, which were sold in competition with, and for substantially less than, the plaintiffs' video set of the television series.

Fox sued on a reverse passing-off claim, asserting that it should have been credited as the producer of the underlying television series. It was effectively seeking to extend the Lanham Act to require attribution of uncopyrighted materials to avoid confusion of the public as to the origin of the product.

The Supreme Court refused to do so, finding it significant for satisfying the "origin" requirements of the Lanham Act that Dastar, whose product the video set was, in fact had manufactured and produced it, as its marketing represented. 539 U.S. at 27, 31. The Court held that unaccredited copying of a

- 8 -

public-domain work could not be redressed by the Lanham Act. Id. at 32.

Here, defendant's misrepresentation has nothing to do with works that have passed into the public domain. Fatal for defendant is that the Supreme Court in Dastar Corp. specifically limited the scope of its ruling in deference to the protection for "creative talent" provided by the Lanham Act. The Court's own example was that passing off one's own product as someone else's *does* give rise to a valid Lanham Act claim. Id. at 37-38.

That is precisely what defendant was caught doing here. Defendant and/or his sources started with a copyright-protected work, Beard's "Mingled Destinies." Then they manipulated it, reproducing it in a highly grainy enlargement, on which they super-imposed blood, ink and snake skins in a cheesy attempt to evoke Beard's manner of enhancing his photographs. Then defendant falsely marketed it as a work by Beard.

Far from being a "misuse or overextension of trademark and related protections" (Def. Br. 12), plaintiffs' trademark claim is squarely within the scope of the Lanham Act. Defendant's conduct deceives the public, falsely trades on Beard's name and reputation, and damages the goodwill associated with Beard's body of works. Defendant's conduct gives rise to a cause of action, not:

> for reverse passing off under the "confusion
> . . . as to origin" provision of Sec.
> 43(a)(1)(A) [unlike Fox's], but for
> misrepresentation under the "misrepresents the

- 9 -

> nature, characteristics [or] qualities"
> provision of Sec. 43(a)(1)(B).

539 U.S. at 38.

Defendant also argues that the Studio lacks standing to assert a Lanham Act claim, raising sinister questions about "what Mrs. Beard's relationship is to plaintiff or whether Mrs. Beard has received permission from Plaintiff's Board of Directors to initiate this litigation." (Def. Br. 15.)

In fact, Beard has authorized Mrs. Beard directly (N. Beard Aff. Exh. A ¶ 11) and as an officer of the Studio (N. Beard Aff. ¶¶ 1, 7, 10) to license and enforce his intellectual property rights, and he places his complete reliance on her in these matters. (P. Beard Aff. ¶ 6.) If defendant felt it was wise to use his opposition papers to try to divide the Beards against each other, or was advised by others to try to do so, then he was badly misinformed.*

---

\* Defendant conducts a veritable campaign to impugn Mrs. Beard. He accuses her of sabotaging sales and "causing damage to collectors such as myself and depressing the market for Beard's artworks." (Giussani Aff. ¶ 18.) Defendant claims she is "dishonest" and tries "to sell artworks by slandering the title of others." (Id.) He opines that her actions are "<u>not</u> in the best interest of the artist, his legacy and the place in history that his career merits." (Id. [emphasis in original].)

All this reflects, at best, is complete ignorance on the part of someone who brags how knowledgeable he is about this artist he purports to so admire. It may be that he relied too heavily on his "longtime" friend, Fabio Fasolini (Giussani Aff. ¶ 11), without realising that Fasolini has taken in very bad grace his termination in 2005 as Mr. Beard's Italian representative. (P. Beard Aff. ¶ 30.)

POINT III

THE TEMPORARY RESTRAINING
ORDER SHOULD CONTINUE IN PLACE

A. Defendant Misstates the
   Standards for a TRO

To qualify for a temporary restraining order, the moving party must meet the standard applicable to a preliminary injunction: irreparable harm and either (a) a likelihood of success on the merits or (b) sufficiently serious questions on the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. AIM International Trading LLC v. Valcucine SpA, 188 F. Supp. 2d 284, 386-87 (S.D.N.Y. 2002) citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979).

Defendant appears to argue that a mandatory injunction is sought here, so that plaintiffs must meet a higher standard by showing a "clear or substantial likelihood of success." (Def. Br. 15 [emphasis added].) This misunderstands the nature of a preliminary injunction against infringement. As the Second Circuit explained in Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108 (2d Cir. 2006):

> in the typical trademark case a prohibitory injunction seeks to stop alleged infringement. A mandatory injunction, in contrast, "orders an affirmative act or mandates a specified course of conduct," such as requiring a defendant to turn over phone numbers featuring a tradename or to assign a trademark.

Id. at 114 (quoting Tom Doherty Associates v. Saban Entertainment, Inc., 60 F.3d 27, 34 [2d Cir. 1995]).

- 11 -

Here, no affirmative act is required of defendant. He is merely being restrained from trafficking in counterfeit art. The temporary restraining order is wholly prohibitory, enjoining him "from offering for sale, selling, removing from New York City, transferring, pledging, assigning, encumbering or other disposing of the Counterfeit Artwork."

B. Plaintiff Has Met the
   Governing Standard

In a copyright case, infringement almost inevitably causes irreparable injury to the rightsholder. Consequently, a *prima facie* case of copyright infringement gives rise to a presumption of irreparable harm, and the requirement of proof of irreparable harm can be met by proof of a likelihood of success on the merits. MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 193 (2d Cir. 2004).

A *prima facie* case of infringement is established by showing that plaintiff owns a valid copyright and that defendant has engaged in unauthorized copying. ABKCO Music, Inc. v. Stellar Records, Inc., 96 F.3d 60, 64 (2d Cir. 1996). Defendant does not dispute, as he could not, that copyright in "Mingled Destinies" was registered in Mr. Beard's name in 1974. (N. Beard Aff. Exh. A ¶ 9; P. Beard Aff. Exh. A.) Although originally created in 1965, the work was not published until its registration. (P. Beard Aff. ¶ 10.) The complaint clearly alleges copying by defendant of "Mingled Destinies." (N. Beard Aff. Exh. A ¶ 17.)

Thus, since plaintiffs have made a *prima facie* showing of copyright infringement, they have satisfied the element of likelihood of success on the merits, and irreparable harm should be presumed. ABKCO, 96 F.3d at 64.

Defendant makes a secondary argument premised on the first-sale doctrine under the Copyright Act, which limits copyright owners' ability to put restrictions on a person who purchases a particular copyrighted work in a "first sale" by the copyright owners. 17 U.S.C. § 106(3).

This argument does not merit extended discussion. In order for the first-sale doctrine to apply, the copy at issue must have been the subject of a first sale by the copyright owner. Microsoft Corp. v. Harmony Computer & Electronics, Inc., 846 F. Supp. 208, 212 (E.D.N.Y. 1994). Defendant has the burden of tracing his chain of title to prove that his right to invoke the first-sale doctrine flows from a first sale by Beard. Id.

Defendant has produced no invoice or bill of sale. Defendant's claim that he bought the piece from Mario DiBenedetto, whose relationship to the parties is unexplained (Giussani Aff. ¶¶ 9, 13), is insufficient. As the Harmony court explained,

> Even an unwitting purchaser who buys a copy in the secondary market can be held liable for infringement if the copy was not the subject of a first sale by the copyright holder . . . unless title to the copy passes through a first sale by the copyright holder, subsequent sales do not confer good title."

- 13 -

846 F. Supp. at 212 (quoting American International Pictures, Inc. v. Foreman, 576 F.2d 661, 664 [5th Cir. 1978] (emphases and ellipses by Harmony court]).

Far from showing a "strong likelihood of prevailing" on a first-sale defense, defendant is wholly precluded from its application.

## POINT IV

### THE $10,000 BOND PROVIDES AMPLE SECURITY

In the highly unlikely event that defendant prevails at trial on the merits, the security ordered by this Court in the amount of $10,000 is more than sufficient to cover any damage resulting from a temporary halt in his marketing of this single piece.

In requesting that the security be increased to $150,000 (Def. Br. 21-22), defendant grossly overstates the risk of damage he faces:

> The purpose of requiring security prior to issuance of an injunction or a temporary restraining order is to guarantee payment of costs and damages incurred by a party who is wrongfully enjoined or restrained.

Interlink International Financial Services, Inc. v. Block, 145 F. Supp. 2d 312, 314 (S.D.N.Y. 2001) (quoting 13 Moore's Federal Practice [3d. ed. 1997] at 65-94.1).

Defendant's situation is wholly different from that in Interlink, where the enjoined party, a computer consultant,

faced the risk of loss of his entire investment in a computer software program he developed. The consultant's employer had sued him and obtained a mandatory injunction requiring the consultant to turn over to his employer the password and full access to all aspects of the software. Because of the risk that the employer might misappropriate the program, the court increased the bond to the value of the software program in order to secure the consultant against the loss of his entire work.

Defendant here faces no such risk of losing his entire artwork. He faces no risk at all that the piece will be destroyed while he is enjoined. At most, it will remain in New York City and be off the market for a brief time. Defendant has submitted no evidence that his piece will lose value during the time he is enjoined from transferring it. The $10,000 security already posted is more than adequate to cover whatever losses he faces in the interim.

Although defendant claims to have already suffered losses, he is "[only] entitled to damages as may be shown to have been proximately caused by the injunction, up to the amount of the bond." Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1056 (2d Cir. 1990). There is no causal relationship at all, much less a proximate one, between Mrs. Beard's affidavit, and defendant's lost sale.

Defendant's claim that he "has already lost a $45,000 sale of the work based on the groundless slanders and gratuitous abuse contained in Mrs. Beard's affidavit" (Def. Br. 22) is flatly untrue. Without seeing the piece in person, Mr.

- 15 -

Zimmermann agreed to pay defendant $45,000 for a silver gelatin Beard work. Once he saw defendant's piece on April 16, 2007, Mr. Zimmermann refused to go through with the sale, and, indeed, immediately stopped payment on his check. (Zimmermann Dec. ¶ 15.) It was at that moment, on April 16, when defendant "lost a $45,000 sale."

Only after defendant lost the sale did Mrs. Beard inspect the piece. (Id. ¶ 14.) The lost sale had nothing to do with the injunction issued on April 20, 2007, or Mrs. Beard's affidavit. It had to do with _everything_ to do with defendant's false claim that his piece was a silver gelatin work by Peter Beard. Accordingly, defendant is not entitled to increase the bond amount by $45,000.

Moreover, defendant has no support for his preposterous attempt to increase the bond amount by putting a value of $70,000 on his piece. Defendant asserts that "Mrs. Beard estimates that 'Man with Crocodile' is worth up to $70,000." (Def. Br. 22.) What she actually stated was that defendant's "Man with Crocodile" is a worthless fake, and that a _real_ Beard work based on "Mingled Destinies" of the same size as defendant's counterfeit, ranges in value from $50,000 to $70,000. (N. Beard Aff. Exh. A ¶ 25.)

Piling bad argument on top of bad, defendant makes the unsupported claim that "[a]n evidentiary hearing and hiring experts will easily cost $80,000 in expert and legal fees." (Def. Br. 22.) Accepting _arguendo_ the $80,000 estimate, defendant does not indicate how he might be entitled to recoup

these costs from the bond amount, even if a $150,000 bond were posted and the injunction were found to have been improper. "Attorney's fees are typically not recoverable against the bond, absent a statutory directive." B.G. Soft Ltd. v. BG Soft International, Inc., 2002 WL 1467744 at *2 (E.D.N.Y. April 29, 2002) (citing Apul Fruitconsult AG v. Amodess J.V., 1997 WL 777935 at *2 [E.D.N.Y. Oct. 17, 1997]). Although the Copyright Act and the Lanham Act each hold out the potential for the recovery of attorneys' fees by the prevailing party at the Court's discretion, defendant cites no authority for the proposition that such an award can be made at this preliminary stage, before a full determination on the merits.

## Conclusion

In light of the foregoing, Mr. Beard's motion to intervene should be granted, and defendant's motion should be denied in all respects.

Dated:  New York, New York
        May 7, 2007

                                        SHATZKIN & MAYER, P.C.

                                        By_____
                                           Debra A. Mayer (DM 6381)
                                        Attorneys for Plaintiff
                                        1776 Broadway, 21st Floor
                                        New York, New York 10019-2002
                                        (212) 684-3000

- 17 -